# Bowman *v.* Bradley, Appellant.

[Marked to be reported.]

<div style="float:right">

| 151 | 351 |
| --- | --- |
| 19 SC | 1512 |
| 151 | 351 |
| 29 SC | 1 85 |

</div>

*Contract of hiring—Right of employee to possession of house.*

Where a contract of hiring provides for a certain money compensation per day to the employee and a house to live in, the employee has no distinct right of possession of the house, for his possession is that of the employer, and it cannot survive the hiring to which it is incidental, or under which it is part of the contract price for the service performed.

It is not necessary that occupation of a house, or apartments, should be a necessary incident to the service to be performed in order that the right to continue in possession should end with the service. It is enough if such occupation is convenient for the purposes of the service and was obtained by reason of the contract of hiring.

Argued May 30, 1892.    Appeal, No. 11, May T., 1892, by defendant, Patrick P. Bradley, from judgment of C. P. Dauphin Co., June T., 1890, No. 317, on verdict for plaintiff, Henry Bowman.    Before Paxson, C. J., Green, Williams, McCollum, Mitchell and Heydrick, JJ.

Trespass for an alleged unlawful entry into dwelling-house. The facts appear by the opinion of the Supreme Court.

The court charged in part as follows, by Simonton, P. J.:

[" Endeavor to ascertain, in the first place, whether this was a renting for a year or not.    Did the plaintiff rent that house for a year?    Was the contract between the parties that he was to be employed for a year?    And in connection with that a question of law has been raised as to the legal position of the parties towards each other with respect to whether the plaintiff was tenant of the defendant, or whether he was merely in his employ; and that question is one which we shall leave to you to determine, for the reason that if he was a tenant in the

legal sense of that term; if he had rented the house; if he had made such a contract with respect to the house that he became his tenant for the year, then the defendant had no right to turn him out before the year was up, and the plaintiff's right would be different from what it would be if he was not a tenant, but simply in the employ of the defendant. So it becomes a question for you to determine, and it depends upon the nature of the contract and the nature of the employment. We leave it to you, then, to find whether he was a tenant or an employee,] [1] and that involves the question whether the occupation of the house was for the purpose of his employment; whether the occupation of the house was a necessary incident to the employment and the work he was engaged to do? If it was; if the house went with the employment, in the sense that it was reasonably necessary that the person who was employed to do the work should occupy the house; if that was the purpose and use of the house, then he would be an employee and not a tenant; whereas, if that was not so, if the occupation of the house was an independent matter and if he contracted for it as an independent matter, then he would be a tenant. [If the occupancy of the house was not necessary, in other words, to the employment, then he would be a tenant; and you will have to determine then, from the terms of the contract as you find them to be, from the nature of the employment and the situation of the premises and all that, whether the occupation of the house was necessary to the employment. If you find that it was, then he would be an employee, and if it was not, then he would be a tenant.] [2] If you find that he was a tenant, then you would have to find what the contract of the tenancy was—whether it was for a year or for a less time, with the right on the part of the defendant to terminate the tenancy, for whatever reasons. If the contract was a contract of tenancy for a year, if that would be a correct description of the bargain between them, then the plaintiff had a right to stay in it for a year, and if the defendant put him out before the year was up, then he would be liable for whatever damages were occasioned by putting him out. If you should find that he was not a tenant for a year, then you would have to consider whether whatever conditions there were, which gave the defendant the right to put him out, had occurred or not. [If you

find that the plaintiff was an employee; that he was what in legal phrase is called a 'servant;' if you find that the plaintiff was simply employed by the defendant, then you will have to determine what the contract was as to the employment. Was he hired for a year without conditions, or was he hired for a year subject to the condition that if he did not give satisfaction he could be discharged; or, if he was hired for a year, did he fail to perform his duties to such an extent as to give the defendant a right to discharge him before the year was up? All these matters you will have to consider; and if he was an employee and not a tenant, then, whenever the time would come that the defendant had a right to discharge him, the defendant at that time would also have the right to give him notice to leave the house; and if you find that he was employed for a year and that it was not an employment as long as he gave satisfaction to the defendant, then you would have to determine whether he did or not fail in performing his duties.] [3] If he was employed simply so long as he gave satisfaction to the defendant, then you would have to determine whether he did give satisfaction or not.

Defendant's points were as follows, among others:

"4. Even if the jury should find that the hiring was for an entire year and without the qualification that the plaintiff might be discharged by the defendant whenever his services proved unsatisfactory to the defendant, yet if the jury find that the plaintiff refused or failed to obey and carry out the lawful orders of the defendant with respect to the employment, or, in material matters, negligently, carelessly and unskillfully performed his services or omitted to perform the services he was, under the contract, bound to perform, the defendant had a right to discharge him, and upon such discharge had the right to peaceably repossess himself of the house in question. *Answer:* To that we say that if the hiring was for a year and without the qualification referred to, then, if the plaintiff failed to perform his part of the contract in any substantial matters, the defendant would have the right to treat the contract as at an end, and if he did have the right to treat it as at an end, then he would have the right to discharge the plaintiff, and if he had the right to discharge him, then he would have the right to take possession of the house if he did it without doing any

unnecessary damage to the person or goods of the plaintiff; and it is a question for you to determine under the evidence, if that point becomes material, whether or not the plaintiff did fail in material matters to perform his contract. Whether or not he failed to do the work he was employed to do with reasonable care and diligence. You have heard about the feeding of the cows, the plowing, and in respect to there being but one horse, and the feed that was furnished; of these you have heard the evidence on both sides, and they are questions for you to determine." [4]

" 5. If the jury believe that the use and occupation of the house in question was a part of the compensation of the plaintiff for services to be performed by him for the defendant, and that the defendant, either under the agreement between the parties or by reason of the failure of the plaintiff to perform such services properly, had the right to discharge the plaintiff and did discharge him, in such case the defendant was entitled to the possession of said house and had the legal right to take possession of it, provided he committed no breach of the peace and did no wanton damage. *Answer:* To that we say, gentlemen, if you should find the occupation of the house was a necessary incident to the service, and thus find that the plaintiff was an employee and not a tenant, then if he failed to perform his duty to such an extent, as we have instructed you in the preceding point, as would give the defendant a right to terminate his employment, then the defendant would have the right, when he did terminate the employment, to terminate the possession of the house, provided he did no unnecessary damage." [5]

" 7. If the jury find that at the time of the alleged trespass, the defendant had the right to the possession of the house in question, and that no injury was wantonly or negligently done to the goods of the plaintiff by defendant or those acting under him, their verdict must be for the defendant. *Answer*: That point is refused, because it asks us to lay down a wrong measure of what is necessary for damages, and we have explained that so frequently that we refuse that point." [6]

" 10. The plaintiff is not entitled to recover anything in this action for loss of wages, or for the value of the use and occupation of the house in question, or for the expense of obtaining or moving into another house, or for the boarding of his chil-

dren ; the most that he can in any event recover would be for damage wantonly or negligently done by the defendant, or those acting under him, in setting out plaintiff's goods. *Answer :* The answer to be given to that point depends upon what you find to be the contract between these parties. If it was a tenancy for a year and the term had not expired, and the plaintiff, at the time the act complained of was done, was still a tenant with part of his term unexpired, then you would have a right in this case, if you find for the plaintiff, to give such damages as will compensate him for all the wrong that was done him ; damage for the trespass committed upon him in entering the premises ; damage for removing his goods ; for whatever injury was done to his goods by the way in which they were removed, and up to such reasonable time as he could take care of them after they were removed ; to whatever expense he had been put to in reasonably taking care of them, and whatever expense he would be put to in taking them to another place, and to any additional expense he would be put to, to shelter his goods and family. In short, he would be entitled to just such damages as were the actual and probable result of the action of the defendant. This now, gentlemen, on the assumption that he was a tenant for a year and that the term had not expired. On the other hand, if you find that was not the contract, if you find he was a tenant under such conditions as that right had accrued to the landlord to remove him before the year was up, or if you find that for any reason, if he was a tenant, the tenancy had expired, or if you find that he was an employee and not a tenant, then the damage that he would be entitled to, if any, would be whatever would compensate him for any injury to his property in putting it out and in its being out until he could reasonably take possession of it and find a place for it. Perhaps I ought to qualify the last part of that phrase, and say, any injury that was unnecessarily done to his property by putting it out, would be what he could recover, if the landlord had the right to put him out, and I change the instruction to that extent." [7]

" 11. If the jury believe that no damage was wantonly or negligently done by the defendant or those acting under him, to plaintiff's goods, there can be no recovery in this case. *Answer* : That we must qualify again. It is not a question of

wanton damage. It is a question of carelessness or unnecessary, damage, and we have had to qualify that so frequently that we decline this point, because it does not state the proper ground of damages." [8]

" 12. Under all the evidence in this case, the plaintiff is not entitled to recover." Refused." [9]

[" 1. The relation of plaintiff and defendant in this case was that of master and servant, and not that of landlord and tenant; and, upon discharging plaintiff, whether with or without good cause, the defendant was entitled to the occupation of the house in question, and had the right to set out the goods of the plaintiff. *Answer :* [To that we say, as we have already said, we have left the question to you as a question of fact, to determine whether the relation was that of master and servant, or landlord and tenant, and we have told you what would be the legal effect of the finding in one way or the other.] [11]

[" We are asked, however, further by the defendant to tell you that if you find that the plaintiff was in the employ of the defendant, and not his, tenant, the defendant had a right to turn him out without good cause if he chose to take possession of the house, or that if he did turn him out without good cause, he would have the right to take possession of the house. That we cannot say. The defendant could not get any rights to the house by doing that which he had no right to do; and if he had employed the plaintiff for a year, if the circumstances were such that he discharged the plaintiff without having a right to do it, as we understand the point to mean, he could not by so doing get a right to take possession of the house."] [12]] [10]

Verdict and judgment for plaintiff for $331.83. Defendant appealed.

*Errors assigned* were (1–12) instructions, quoting them, as above.

*M. W. Jacobs, Samuel J. M. McCarrell* with him, for appellant.—If the occupation by an employee of a house owned by his employer, is connected with the service, or if it is required, expressly or impliedly, by the employer for the necessary or better performance of the service, the possession of the house is the possession of the employer: King v. Kelstern, 5 M. & S. 136; King v. Cheshnut, 1 Barn. & Ald. 473, 477 ; Kerrains v.

People, 60 N. Y. 221; Chatard v. O'Donovan, 80 Ind. 20; King v. Minster, 3 M. & S. 276; Hughes v. Overseers of Chatham, 5 M. & G. 54; Smith's Master and Servant, 80; King v. Stock, 2 Taunt. 339.

In Lightbody v. Truelsen, 39 Minn. 310, the occupation by the servant was stated to be "merely accessory to the more convenient performance of his duties as servant." In Bertie v. Beaumont, 16 East, 33, it was held that a servant put into occupation of a cottage with less wages on that account does not occupy it as a tenant. In Queen v. Tiverton, 30 L. J., M. C. 79, a Wesleyan minister was held not to be a tenant of a house, the rent of which was paid by the congregation. See also Lake v. Campbell, 5 L. T. N. S. 582. The case of Queen v. Spurrell, L. R. 1 Q. B. 72, is not in conformity with other English and American cases.

The court erred in submitting to the jury the question whether the plaintiff occupied the house as tenant or as servant. Under a given state of facts it is always a question of law whether the relation of landlord and tenant exists: Hughes v. Chatham, 5 M. & G. 54; Fox v. Dalby, L. R. 10 C. P. 285.

The position of plaintiff was that of a servant who had no possession apart from that of the possession of his employer: Bertie v. Beaumont, 16 East, 33; King v. Minster, 3 M. & S. 276; Lake v. Campbell, 5 L. T. N. S. 582; Doe v. Derry, 9 C. & P. 494; Dobson v. Jones, 5 M. & G. 112.

In the following American cases there was a hiring for a compensation and a house to live in, and it was held that the contract created no relation of landlord and tenant: State v. Curtis, 4 Dev. and B. 222; Haywood v. Miller, 3 Hill, 90; People v. Annis, 45 Barb. 304; Doyle v. Gibbs, 6 Lans. 180; Kerrains v. People, 60 N. Y. 221; State v. Jewell, 34 N. J. L. 259.

The defendant's first point was framed under Haywood v. Miller, 3 Hill, 90, and should have been affirmed without qualifcation.

A master may, even during the continuance of the relation of master and servant, remove the servant from the house without becoming a trespasser: Mayhew v. Suttle, 4 E. & B. 347; White v. Bayley, 10 C. B. N. S. 227. One who has mere

possession cannot maintain trespass q. c. f., against one who has the right of possession : Overdeer v. Lewis, 1 W. & S. 90 ; Kellam v. Janson, 17 Pa. 467 ; Zell v. Ream, 31 Pa. 304 ; Hyatt v. Wood, 4 Johns. 150 ; Jackson v. Farmer, 9 Wend. 201 ; Low v. Elwell, 121 Mass. 309.

The words "wanton damage" were correctly used in defendant's points : Cobb v. Bennett, 75 Pa. 326 ; State v. Brigman, 94 N. C. 888 ; State v. Morgan, 95 N. C. 641 ; Welch v. Durand, 36 Conn. 182 ; Railroad v. Huffman, 28 Ind. 287.

*D. Mumma,* of *Mumma & Shopp, A. J. Herr* with him, for appellee.—That no rent, as such, was reserved or provided to be paid, does not negative the existence of the relationship of landlord and tenant : Mitchell v. Com., 37 Pa. 187. See also Hughes v. Chatham, 5 M. & G. 54.

Occupation of premises unconnected with services confers a settlement : Rex v. Kelstern, 5 M. & S. 136, and other cases under the poor laws.

The facts as to the nature of the contract were disputed, and hence the court could not have avoided submitting the case to the jury.

OPINION BY MR. JUSTICE WILLIAMS, October 3, 1892.

The question on which this case turns is one of considerable practical importance, and in this state it seems to be an open one. The learned trial judge finding no precedent in our own reports to guide him turned to the English courts, and followed what he believed to be the rule held by them. He stated at the same time that the question was one that could "only be settled by a decision of the Supreme Court." The facts on which the question arises are mainly undisputed. They show that Bradley owned a farm in Dauphin county containing about twenty-nine acres. About four or five acres of this were occupied by a mill and pond operated by the owner. To care for the balance and the stock upon it he hired Bowman and his family. The farm work and the care of the cattle were to be looked after by Bowman. His wife was to milk the cows. His son was to deliver the milk each morning to Bradley in the city of Harrisburg. For this labor Bowman was to receive one dollar per day and the use of a house upon the premises to be occupied by himself and family. The only fact in dispute

was the duration of the contract. The plaintiff alleged it was to continue for one year. The defendant asserted that it was terminable at his pleasure. He says he told Bowman " I will try you, and on your terms, and if you don't suit me I will discharge you and expect you to leave the premises on sight." Which was the true version was a question of fact for the jury. If they found with the defendant that was an end of the plaintiff's case unless by some arbitrary rule of law the employee was turned into a tenant for years. On the other hand if they found the contract was for one year the plaintiff was entitled to recover unless the defendant could show a sufficient reason for terminating it sooner. The first question therefore that presented itself on the trial was over the nature and extent of Bowman's right to the house from which he was ousted by the defendant. Was that right an incident of the hiring and dependent on the continuance of the relation of employer and employee, or had it an independent separate existence, so that he was to be treated as a tenant for years with a right to remain in possession for one whole year whether he remained in the employment of the owner or not?

This was a question of law. The terms of the contract, so far as the parties differed, it was the duty of the jury to determine; but the terms being fixed, their legal import was for the court to declare. This should be determined upon a consideration of the nature and purpose of the contract, and the character of the business to which it relates; and analogies furnished by cases arising under the poor laws in England or in this country, while they may be helpful in some respects, ought not to be controlling. The subject of this contract was labor. Labor was what Bradley needed and undertook to pay for. It was what Bowman offered to furnish him at an agreed price. The labor was to be performed upon the land in its cultivation, in the care of the cows, and the delivery of the milk. As Bowman was not a cropper, or a tenant paying rent, his possession of the land and the cows, and the implements of farm labor, was the possession of his employer. The barn was used to stable the cattle and store their feed. The house was a convenient place for the residence of the laborer. The house, the barn, the land, the cattle, the farming tools were turned over into the custody of the man who had been hired to care for the

property; but he had no hostile possession, no independent right to possession. His possession was that of the owner whom he represented, and for whom he labored for hire.

This is not denied as to the farm, the barn, the stock, or the tools, but an attempt is made to distinguish between the house and everything else that came into the possession of the employee in pursuance of the contract of hiring. There is no solid ground on which such a distinction can rest. If the possession of the house be regarded as an incident of the hiring, the incident must fall with the principal. If it be regarded as part of the compensation for labor stipulated for, then the right to the compensation ceased when the labor was discontinued.

Bowman had the same right to insist on the payment of the cash part of his wages as on that part which provided his family a place to live. His right under the contract of hiring was like that of the porter to the possession of the porter's lodge; like that of the coachman to his apartments over the stable; like that of the teacher to the rooms he or she may have occupied in the school buildings; like that of the domestic servants to the rooms in which they lodge in the house of their employers. In all these cases and others that might be enumerated the occupancy of the room or house is incidental to the employment. The employee has no distinct right of possession, for his possession is that of the employer, and it cannot survive the hiring to which it is incidental, or under which it is part of the contract price for the services performed. So in this case, if the contract was simply a contract for labor at one dollar per day and a house to live in, the plaintiff held the house by the same title and for the same purpose that he did the land or the cattle in the care of which his labor was to be performed. When his contract ended, his rights in the premises were extinguished, and it was his duty to give way to his successor. The jury might have found the disputed term of the contract in the plaintiff's favor and that the contract was made in express words for one year. In this case the defendant would be called upon to explain his conduct in discharging the plaintiff before the time for which he was hired had expired; and the jury would have to determine whether his conduct was a violation of the contract on his part, or was justified by the reasons assigned. But the plaintiff's declaration

is not drawn upon this basis. It does not allege a violation of contract but a trespass. It asserts that the plaintiff was "in the lawful and peaceable possession of a certain dwelling-house, messuage and tract of land," and that the defendant "with a high hand entered upon said close . . . . and forcibly threw out of said dwelling the furniture and property of said plaintiff and exposed the same to the weather and broke and injured the same." The damages alleged are for injury to the furniture, and money paid to secure another house for himself and family. The case seems to have been begun, and tried, by the plaintiff on the theory that his right to the possession of the house was superior to his right to remain in the defendant's service; and that while his employer might dismiss him from the one at any time, he could not oust him from the other until the expiration of one full year. Such a theory cannot be sustained by proof of a contract for labor at a fixed price per day and a house to live in. It can only be supported by proof of a contract for one year's occupancy of the house. Both parties agree that the contract in this case was one of hiring. There is no pretence of a separate lease for the house. The compensation for its use was in the labor to be performed on the premises. When the labor ceased on the nineteenth of July, the plaintiff ceased to pay for his occupancy. By ceasing to labor without remonstrance or objection he must be held to acquiesce in the defendant's right to terminate the contract for labor. If that contract was rightfully terminated then the plaintiff's right to the house was at an end and he could be lawfully put out of possession.

These views sustain the first and second assignments of error. The fifth assignment is also sustained. It is not necessary that occupation of a house, or apartments, should be a necessary incident to the service to be performed in order that the right to continue in possession should end with the service. It is enough if such occupation is convenient for the purposes of the service and was obtained by reason of the contract of hiring.

For the reasons thus given the judgment in this case is reversed.