## Huggins v. Bridges, Appellant.

*Landlord and tenant—Wrongful eviction—Trespass.*

Where an employee occupies a room belonging to his employer as part of the consideration for his services or wages, he has no right after his discharge from his employment to continue the occupancy of the room; but if he does so, and his employer wantonly stops up the chimney, and forces smoke and gases back into the room thereby injuring the occupant's wife, the latter will be entitled to recover damages for the injuries sustained.

In such a case, while the occupant is not strictly and legally speaking a tenant holding over, the court cannot be charged with error in saying to the jury, "we must assume that the plaintiff's husband was under a tenancy which had terminated."

Argued April 10, 1905. Appeal, No. 7, April T., 1905, by defendant, from judgment of C. P. No. 3, Allegheny Co., May Term, 1903, No. 313, on verdict for plaintiff in case of Elizabeth Huggins et al. v. O. H. Bridges et al. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before McCLUNG, J.

At the trial it appeared that Newton Huggins, husband of the plaintiff, had been in the employ of the defendants, and as a part of his consideration for services or wages was allowed to occupy with his wife a room on the second floor of the defendant's livery stable. After his discharge he continued in the occupation of the room. The defendants stopped up the chimney and turned smoke or gases back into the room. It was claimed that this act of the defendant injured the plaintiff, the wife of Huggins.

The court charged in part as follows:

The case is within a very narrow compass. [Under the testimony as presented to you, you must assume that the plaintiff's husband was under a tenancy which had terminated;] [1] that it was the duty of the plaintiff and her husband to get out of that house, and also that the defendants had the right to put them out, provided, however, that they did not commit a

breach of the peace or use unnecessary force in putting them out. The result of all this is, to make it short, that there is no act charged against them here for which they would be liable in damages, unless it be the act of stopping up this chimney and turning back the smoke upon this woman, and thus producing discomfort and temporary sickness. There is no evidence that there was permanent sickness, and there is no evidence here that would justify you in finding that there was anything that affected the birth of plaintiff's child. Nothing more than a temporary sickness of the woman herself would be justified as a finding, under the evidence in the case.

[Whilst these parties, the defendants, had the right to have the possession of that property and to put these parties out, and to use so much force as was necessary, short of committing a breach of the peace, yet they had no right to wantonly injure them, even although they may have supposed that that wanton injury would help them in getting them out; and if they attempted to poison the atmosphere of their room by turning back the smoke on them, then that would be a wanton injury, and they would be liable for the direct consequences of that. Of course, those consequences were not the termination of the tenancy nor the putting of the woman out, or anything of that sort, but the inconvenience and temporary sickness, if sickness at all, that resulted from forcing this smoke back, preventing it from getting out rather, and thus compelling her to live, for the time that she says she did, in the vitiated atmosphere of that room or of those rooms.] [2]

Now, did they do this? Did they do it wantonly for the purpose of injuring this woman? If they did it for the purpose of protecting their property, as a matter of course they are not liable. It is only in case they did it to injure her, to make her uncomfortable, to make the rooms uncomfortable and possibly uninhabitable, that they are liable.

Verdict and judgment for plaintiff for $157.50. Defendants appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*C. A. O'Brien,* of *O'Brien & Ashley,* for appellants.—There

was no tenancy here, but a contract of hiring with occupation of the rooms as part of the wages. This being the case, plaintiff never had any right of possession distinct from defendants : Bowman v. Bradley, 151 Pa. 351.

Consequently no such action as plaintiff brought could possibly lie, for it is based on the relation of landlord and tenant.

*J. Welfred Holmes,* for appellee.

OPINION BY BEAVER, J., October 9, 1905 :

The appellants, in their history of the case, say : " In December, 1902, appellants kept a livery at No. 325 Seventh avenue, Homestead, Pa., and had had in their employ Newton Huggins, husband of the plaintiff in this action, a colored man. As part of the consideration for his services or wages, Huggins was allowed to occupy with his wife a room or rooms on the second floor of the livery building. This was a mere right of occupation, continuing only during his employment, and on the trial this fact was admitted."

In 25 Eng. Ruling Cases 1, the rule deduced from the cases, as to what constitutes a tenancy, is : " Where a person having an estate upon condition continues to hold after the condition is broken, he is, until the remainderman enters, a tenant at sufferance ; if he is in possession by agreement with the owner so long as both he and the owner please, he is a tenant at will, strictly so called ; but, if he is a tenant at a yearly rent, with no express stipulation as to terms of tenancy, he is a tenant from year to year."

Under the facts, as admitted by the appellants, the plaintiff's husband, under whom she claimed, had been until his employment was terminated a tenant at will. The court, therefore, was entirely right in the use of the language complained of in the first assignment of error, when saying to the jury : " You must assume that the plaintiff's husband was under a tenancy which had terminated."

It is true that the holding of the plaintiff's husband (which is all that tenancy means) did not constitute him a tenant of his landlord in the ordinary sense of that term : 2 Bouv. Law Dict. 1105. " In a popular sense he (a tenant) is one who has the temporary use and occupation of lands or tenements which

belong to another, the duration and other terms of whose occupation are usually defined by an agreement called a lease, while the parties thereto are placed in the relation of landlord and tenant." The relation of landlord and tenant, as we usually apply the terms, did not exist in this case. The husband was the employee of the owner of the property. He held under him and held only during his employment, which was at the will of the owner of the property. He had no rights as a tenant under the laws regulating the landlord and tenant procedure. He was not a tenant in the sense in which that term is used in Bowman v. Bradley, 151 Pa. 351, and in our own case of Zinnell v. Bergdoll, 19 Pa. Superior Ct. 508. His rights were gone. He was holding against the will of his employer and, if the defendants had set out his goods, using no more than ordinary force, they could not have been held liable for damages in trespass.

The court was careful to guard appellants' rights in this respect and, therefore, in the language which is complained of in the second assignment of error, the trial judge said : " Whilst these parties had the right to have the possession of that property and to put these parties out, and to use so much force as was necessary, short of committing a breach of the peace, yet they had no right to wantonly injure them, even although they may have supposed that that wanton injury might help them in getting them out; and, if they attempted to poison the atmosphere of their room by turning back the smoke on them, then that would be a wanton injury and they would be liable for the direct consequence of that. Of course, those consequences were not the termination of the tenancy nor the putting of the woman out, or anything of that sort, but the inconvenience and temporary sickness, if sickness at all, that resulted from forcing this smoke out—preventing it from getting out, rather—and thus compelling her to live for the time that she says she did in the vitiated atmosphere of that room or of those rooms."

It is not necessary to recite the circumstances under which the plaintiff was compelled, or at least deemed it necessary, to remain in the rooms from which it was sought to eject her by placing an obstruction upon the chimney and thus turning back the gases released by the fire and which sought

their escape through the chimney, nor is it necessary to characterize such action. If the testimony of the plaintiff was to be believed, she was injured in her health. The jury evidently believed her and so found a verdict in her favor. The facts clearly warranted such a finding and we can see nothing in the charge of the court in submitting the case to the jury which is in any sense erroneous.

We can see no fatal variance, under the circumstances, between the averments of the statement and the facts proved at the trial. It is true that the plaintiff was not in the "lawful, peaceable and quiet possession of the premises, as tenant of the defendants," but her right to recover did not depend upon that fact, but upon the wantonness of the acts of the defendants. The essential element, therefore, necessary to a recovery was proved, and the verdict could only be sustained upon that theory.

We see nothing whatever in the case requiring further discussion or any interference at our hands.

Judgment affirmed.