T. E. DAVIS, Respondent, v. HARRY W. LONG, Appellant.

(178 N. W. 936.)

**Landlord and tenant — right to occupy farmhouse incidental to employment ceases with the service.**

1. The occupancy of a house by a man hired to operate a farm for a certain monthly wage, and the use of the house thereon to live in with his family, is incidental to the employment, and the right thereto ceases with the termination of the service. In such case the possession of the employee is in legal effect, the possession of the employer.

---

NOTE.—For authorities discussing the question of right of one who was in peaceable possession to maintain forcible entry and detainer against another entitled to possession, who forcibly dispossesses him, see notes in 8 L.R.A.(N.S.) 426; 32 L.R.A.(N.S.) 51; and L.R.A.1918B, 670.

On character of occupation of premises by servant which will entitle the master to resume possession immediately upon termination of the services, see note in 4 L.R.A.(N.S.) 703.

On right of owner of land to effect an entry thereon, see note in 19 Am. St. Rep. 544.

**Forcible entry and detainer — rule that occupancy of house by employee is incidental to operation of farm and ceases with service, not abrogated by statute.**

2. This rule is not abrogated or changed by § 7175, Comp. Laws 1913, which provides that "for forcibly ejecting or excluding a person from the possession of real property the measure of damages is three times such a sum as would compensate for the detriment caused to him by the act complained of."

Opinion filed July 3, 1920.

Appeal from the District Court of Morton County, *Hanley,* J.

Defendant appeals from a judgment and from an order denying **a** motion for judgment notwithstanding the verdict or for a new trial.

Reversed.

*Nuchols & Kelsch,* for appellant.

The employee is not deemed to have any distinct possession, his possession being deemed in law, during the employment, that of his employer, without any rights surviving the employment. 16 R. C. L. p. 582, § 57; Lane v. Au Sable Electric Co. Ann. Cas. 1916C, 1112 note; Wood, Master & S. 2d ed. § 155, p. 304; DeBrair v. Mintrum, 1 Cal. 450.

Master has the right to use force reasonably necessary to expel servant. 16 R. C. L. p. 582, § 57.

The master may eject the servant from possession of the house or apartments if he had been discharged, without giving him notice to quit. Bourland v. McKnight & Bros. 4 L.R.A.(N.S.) 706 note, and authorities cited in support thereof.

*Sullivan & Sullivan* and *J. A. Hoder,* for respondent.

CHRISTIANSON, Ch. J. Plaintiff commenced this action in a justice's court of Morton county to recover the possession of certain real property situated in that county, and for treble damages for having been ejected therefrom. In his complaint the plaintiff averred that he "was rightfully and peaceably in possession of a certain farm and dwelling house, barns and sheds thereon, described as follows, to wit: Northwest quarter of section thirty-four (34), township one hundred thirty-four, range eighty, Morton county, North Dakota;" and "that on the 4th day of September, A. D. 1917, the defendant forcibly entered

thereon, and in a forcible manner and without authority disseised the plaintiff and ejected and put him out of said lands and tenements, and by force and violence, and by threats and intimidation, and with a strong hand, kept him out therefrom, to his damage in the sum of $50, whereby defendant, by force of § 7175, Comp. Laws 1913, forfeited and became liable to pay treble the amount of such damages." The prayer for judgment was that plaintiff have judgment for treble damages, and "for the possession and restitution of said premises and house and dwelling." The answer was a general denial. The trial in the justice's court resulted in a judgment in favor of the plaintiff for $83.85 damages, and possession of the premises. The defendant appealed to the district court and demanded a new trial. In the district court defendant's answer was amended so as to set forth that the plaintiff occupied the premises as defendant's servant; that the contract of service had been terminated, and plaintiff requested to remove from the premises. The trial in the district court was to a jury. A verdict was returned in plaintiff's favor for $60 damages. Judgment was entered pursuant to the verdict, and defendant has appealed from the judgment and from the order denying his motion for a judgment notwithstanding the verdict or for a new trial.

The plaintiff is a married man with a family. In July or August, 1919, he entered into an agreement with the defendant, by the terms of which he agreed to manage defendant's farm. The plaintiff, in his testimony, gives the following version of the arrangement:—

"I told him that I would come over and run his place for a certain consideration. . . . The consideration was $65 a month, and it was agreed that he was to furnish us the provisions, 30 bushels of potatoes, 700 pounds of live meat, 400 pounds of sugar, 700 pounds of flour, the product of the poultry that was on the place, and the product of four cows,—three cows at that time were milking. That was to be included in the $65 a month. He was to furnish us with our board and the home property, the residence. . . . He said we were going to live in the farm home, and they were to give us possession two weeks after we came there, and they gave us possession immediately upon our arrival."

The plaintiff further testified that it was understood that the arrangement so made was to continue for a period of one year. The

defendant testified substantially the same so far as it related to the character of the arrangement and the compensation to be paid; but he denied that there was any understanding that the arrangement was to continue for a year or any other fixed period; he claimed that it was understood that it might be terminated by either party whenever he, for any reason, became dissatisfied. He further testified that it was not the understanding that the plaintiff and his family were to occupy the dwelling house, but that they were to occupy another house designated as the "tool house." It appears, from the evidence without dispute, that when plaintiff and his family arrived, defendant and his family were occupying the dwelling house, and that both families staid therein for some days. Part of plaintiff's household goods were placed in the tool house and part in the dwelling house. Plaintiff further testified that for certain reasons of convenience he deemed it desirable to move his family to the town of Solen,—a short distance from the farm; but that it was understood they would later move back on the farm and occupy the dwelling thereon. That it was agreed that plaintiff and his family might occupy the dwelling until such time as defendant's family moved back, at which time it was understood plaintiff and his family would move into and occupy the tool house. The undisputed testimony shows that defendant had another hired hand who had been in his employ on the farm for about a year, and that such hand remained on the farm at all times, occupying his quarters and continuing to perform his work as before plaintiff was employed.

It is undisputed that plaintiff entered upon the premises about August 6, 1917. On or about September 2, 1917, some difficulty arose between the parties, with the result that defendant notified plaintiff that the contract between them was terminated. They went to a bank at Solen and made settlement; and it is undisputed that plaintiff was paid in full for all services rendered to that time. It is further undisputed that defendant, at that time, informed plaintiff that defendant's family would move back on the farm, and requested plaintiff to vacate the dwelling house. On September 4, 1917, defendant's wife and a servant named Wright came to the premises with two loads of household goods. They had written instructions from the defendant to take possession of the house, and to use whatever force was necessary for that purpose. There is a square conflict in the evidence as to what

took place after defendant's wife and Wright arrived at the farm. Defendant's wife denies that any force whatever was used in taking possession. She testified that she merely opened the door and went into the house, where she found plaintiff's wife and daughter sitting apparently ready to leave the house, and with all their belongings ready to move. On the other hand, the plaintiff and his wife testified that the doors were locked, and that defendant's wife and Wright broke the door off its hinges, and in this way effected an entrance. Plaintiff further testified that defendant's wife and Wright thereafter put the furniture which they had brought into the house, and moved his furniture,—"a portion of it into a rear room, and a portion of it in a house outside, and a portion of it on the porch." The plaintiff and his wife did not leave, however. It is undisputed that both families staid in the house that night; and that plaintiff, also, staid there the next night. In the meantime plaintiff had consulted his attorney, and the present action had been instituted. Plaintiff testified that at the time of the trial in justice's court his furniture remained on the premises; but that, upon the advice of his attorney, he had moved them before the case was tried in the district court.

The trial court instructed the jury, *inter alia,* as follows:

"It makes no difference, if Mr. Long here was entitled to the possession of the house, if, as a matter of fact, the plaintiff, Mr. Davis, was in peaceable possession of the house, Mr. Long would have no right to take possession of it by force; and the reason for that is, the possession of property, the possession of a home, is the cause of a great many conflicts in the past under our laws. A man in a home has a right to make his home his castle and exclude everybody from it. On the other hand, the man who owns a place has a right to its possession, and a great many conflicts have arisen where one man says he is entitled to a house and wants it, and the other man says, 'This is my house, my home, and I am rightfully in possession.' The law has therefore sought to prevent the taking of property by force. So we have a statute which provides that a person, even though he is entitled to possession, cannot go and use force to oust another person from a house if that person is there in peaceable possession.

"So it is not a question as to when the contract was terminated, or whether or not the contract was terminated. The house was in the

peaceable possession of the plaintiff, Mr. Davis. Now, then, the question is, Did Long forcibly take possession from him or eject him? And, if he did, then this plaintiff should recover. . . . Even though you are satisfied from the evidence that the defendant, that is Mr. Long, was the legal owner of the premises in question, and was lawfully entitled to the possession thereof, still, if it is further proven that the plaintiff was in the actual and exclusive peaceable possession, and I charge you as a matter of law that he was, then the defendant would have no right to forcibly enter and expel the plaintiff therefrom.

"The question of the contract or agreement that was entered into between these parties, as to whether the plaintiff was to stay there a year or by the month, is not material to the issues in this case. The question is, under what circumstances was the possession of the premises taken away from Davis, if it was taken away. That is the material question for the jury to determine from the evidence in the case. . . . Under the statutes of this state, the measure of damages for forcibly ejecting a person from the possession of real property, the measure of damages is three times such a sum as would compensate him for the detriment caused to him by the act complained of; (so that, if you find for the plaintiff, you will determine from the evidence such sum as would compensate him for the detriment caused him."

On this appeal, defendant, under appropriate specifications of error, argues that the evidence was insufficient to justify the verdict; and that the court erred in its instructions to the jury. The various specifications rest upon the contention that the contract between plaintiff and defendant was one of employment; that it created the relation of employer and employee, and not that of landlord and tenant; that the occupancy by the plaintiff of the premises was connected with the service, and necessary for its performance; that the possession of the plaintiff was, in legal effect, the possession of the defendant, his employer. After a careful consideration, we have reached the conclusion that these contentions are correct. Clearly the agreement between the plaintiff and defendant was one for service. In order to properly perform such service plaintiff must have some place to live. The occupancy of the house was incidental to the service. Such occupation was convenient for, if not essential to, the proper performance of the service; and the right to occupy such premises was obtained solely by reason

of the contract of hiring. The possession was not exclusive; for, as has been noted, the other hired hand remained upon the premises as before.

"The question has frequently arisen as to whether a transaction by which a person is to occupy or manage real estate of another is to be considered a lease or a mere employment as agent or servant. In a particular case due to the informal manner in which such agreements are evidenced, the question whether the relation is that of landlord and tenant, or not, is usually primarily for the consideration of the jury or other tribunal whose function it is in the given instance to determine issues of fact; still if the action is being tried in a court consisting of a judge and jury, it is unnecessary to submit to the jury the character of the occupation, if that depends upon the significance of substantially undisputed facts, and diverse inferences may not reasonably be drawn therefrom. If there is no reservation of rent eo nomine or substantially, this is a strong consideration to show that no lease was intended, whereas if there is a stipulation for the payment of rent eo nomine or substantially, this is a material consideration tending to show that the occupation was as a tenant. And the fact that the compensation of the landowner is a stated part of the profits received by the other party from the use and occupation of the premises does not prevent the transaction from being considered a lease. The circumstance that the right of occupation terminates with the abrogation of the contract of service, by consent or by the discharge of the servant, is not decisive. The question is, What was the character of the holding under the contract? And there is no reason why the fact that a servant is engaged for a definite period should be treated as an element in determining the character of the occupancy. So, while a deduction from wages of a specified sum for the use or the absence of such an arrangement would be a material circumstance, it would not be, in all cases, conclusive either way. The question depends upon the nature of the holding, whether it is exclusive and independent of and in no way connected with the service, or whether it is so connected, or is necessary for its performance.

"Frequently, in connection with one's employment, he is given the right to occupy a dwelling house or apartments of his employer. In such a case, if the occupancy is directly incident to the service, or is

required for the necessary or better performance of the service, he is generally considered as occupying merely as a servant, and not as a tenant, and the possession is that of the master; and to render the occupation that of a servant it is not necessary that the occupation of the house be a necessary or essential incident to the service to be performed; it is enough if such occupation is convenient for the purpose of the service, and was obtained by reason of the contract of hiring. Thus, where A employed B to work in his mill, agreeing to pay him certain wages per day and to give him the use of a house which was part of the mill property, and which had before been occupied by B while working in the mill, it was decided that B held the house as a servant, and not as a tenant. So the occupancy of a house by a farm hand and his family, who are hired to do work connected with the farm for a certain price per day and the use of the house to live in, is incidental to the employment, and the right thereto ceases with the termination of the service, the possession being all the time that of the owner." 16 R. C. L. pp. 578–580, §§ 53, 54. See also Labatt, Mast. & S. 2d ed. §§ 78–83; Bowman v. Bradley, 151 Pa. 351, 17 L.R.A. 213, 24 Atl. 1062; MacKenzie v. Minis, 132 Ga. 323, 23 L.R.A.(N.S.) 1003, 16 Ann. Cas. 723, 63 S. E. 900; Lane v. Au Sable Electric Co. 181 Mich. 26, Ann. Cas. 1916C, 1108, 147 N. W. 546; Debriar v. Minturn, 1 Cal. 450; McQuade v. Emmons, 38 N. J. L. 397; note in 4 L.R.A.(N.S.) pp. 704–706; 19 Cyc. p. 1139, and cases cited in note 36.

Plaintiff, however, contends that the common-law rule has been abrogated by § 7175, Comp. Laws 1913, which reads: "For forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such sum as would compensate for the detriment caused to him by the act complained of." In other words, it is contended that this statute makes the actual possession of real property the test; that holding, or the right to hold, may be dispossessed only by means of an action of forcible entry and detainer or an action of ejectment. The instructions quoted indicate that those contentions were sustained by the trial court.

We do not believe that § 7175, supra, is susceptible of the interpretation so placed upon it. The statute is penal in its nature. It purports to punish the party who comes within its terms by requiring him

to pay three times the amount of damages he actually caused. It is elementary that such a statute should be strictly limited to the cases to which the lawmakers intended that it should apply. The statute relates to the measure of damages. That is all it purports to affect. It in no manner changes the relative rights and obligations of an employer and an employee as respects the possession of premises furnished to and occupied by an employee incidental to the employment. The statute applies only in case the party sought to be charged with liability has "forcibly ejected or excluded a person from the *possession* of real property." In the eyes of the law a servant who occupies real property incidental to and as a part of his employment is not in possession thereof as against his master. He has no estate in such property. Comp. Laws 1913, § 5304. His possession is the possession of the master. See authorities cited above.

The case of Heffelfinger v. Fulton, 25 Ind. App. 33, 56 N. E. 688, decided by the appellate court of Indiana, is almost identical with the case at bar. In that case the plaintiff was employed by defendant as a farm hand, and, as part of his compensation, was given the occupancy of a house and garden. On being ejected from the premises, he brought an action against his employer for trespass. The court ruled that the action would not lie; that the relation between the parties was that of master and servant, and not that of landlord and tenant, and that "Burns's Rev. Stat. 1894, § 7118, providing that any person who shall unlawfully detain lands from the person having the right to the possession thereof shall be liable for damages for such retention, has no application to cases where the relation between the landowner and occupant is that of master and servant, since the possession of the servant is that of the master." Syllabus, ¶ 2. In the opinion in that case the court said: "Section 7118, Burns's Rev. Stat. 1894, is relied upon by appellant. This statute is not applicable in a case like this. In every case covered by the statute, *possession* is contemplated. . . . It does not apply to a case where there is not, and cannot be, possession in the occupant. It cannot apply to a case like the one under consideration, where, by contract, the relation assumed between the landowner and the occupant is that of master and servant. Appellant had no possession. His possession was that of the appellee, his employer. It could not survive the contract of hiring, to which it was incidental,

and under which it was a part of the price for services to be performed by appellant. When appellant's contract was cancelled, his right to occupy the premises terminated." 25 Ind. App. 37.

In considering a similar question the supreme court of Pennsylvania said: "The subject of the contract was labor. Labor was what Bradley needed and undertook to pay for. It was what Bowman undertook to furnish him at an agreed price. The labor was to be performed upon the land, in its cultivation, in the care of the cows, and the delivery of the milk. As Bowman was not a cropper or a tenant paying rent, his possession of the land and the cows and the implements of farm labor were the possession of his employer. The barn was used to stable the cattle and store their feed. The house was a convenient place for the residence of the laborer. The house, the barn, the land, the cattle, the farming tools, were turned over into the custody of the man who had been hired to care for the property; but he had no hostile possession, no independent right to possession. His possession was that of the owner, for whom he labored for hire." Bowman v. Bradley, 151 Pa. 359, 17 L.R.A. 216, 24 Atl. 1063.

Reference has been made to the decision in the case of Iron Mountain & H. R. Co. v. Johnson, 119 U. S. 608, 30 L. ed. 504, 7 Sup. Ct. Rep. 339, and to the decision of the New Jersey court of errors and appeals in the case of Schwinn v. Perkins, 79 N. J. L. 515, 32 L.R.A. (N.S.) 51, 78 Atl. 19, 21 Ann. Cas. 1223. Those cases have no application in this case. The facts in those cases were wholly different from the facts in the case at bar. The first case was one in which a contractor, who had constructed a portion of a railroad under a written contract, was ousted from possession without being paid for his services. The second case was one wherein the party dispossessed claimed the right of possession as a tenant. In that case the New Jersey court expressly recognized the doctrine that the possession of the servant is, in the eyes of the law, the possession of the master. The court said: "That mere occupancy or personal presence upon the ground is not sufficient to constitute that possession which the law clothes with legal rights is shown by a few illustrations. *There may be possession without occupancy, as where a man's servant is in the actual occupancy of the property, holding possession for him,* or where a man has temporarily gone out of his house, leaving no one in charge, but still having legal possession;

and there may be a case of occupancy without possession, as where, in a man's absence, a mere stranger, visitor, or trespasser goes into his house without claim of right." 32 L.R.A.(N.S.) p. 54.

This is not, however, the only occasion the New Jersey court has had to consider this question. The precise question adverted to was squarely involved in McQuade v. Emmons, 38 N. J. L. 398, wherein the court said: "It appears from the affidavit that the plaintiff, McQuade, was employed by the defendant, Emmons, by the month; that as a compensation for the services to be rendered by McQuade, he was to receive from the defendant $25 a month, and the use of a house for himself and his family, so long as he might work for the defendant in an acceptable manner; that under this agreement the plaintiff went into the occupancy of the house in question, the same being the tenant house standing and being upon the property owned by the defendant, known as Edge Hill, on Stockton street, in the borough of Princeton, and engaged in the service of the defendant; that he continued in such service and occupancy until the defendant, becoming dissatisfied with the plaintiff, discharged him from his employment, whereupon the plaintiff quitted his service, but refused to leave the house at the defendant's bidding. It was admitted in the argument that the tenant house so described was on lands upon which the defendant resided, and of which he was in actual possession during all the time of the plaintiff's employment. Under the contract set forth, McQuade was not the tenant of Emmons, nor could he be proceeded against, or claim to be treated as a tenant. The agreement shows their relation to have been that of master and servant, and not of landlord and tenant. The occupation of the house by McQuade and his family was part of his compensation for the performance of his engagement with the defendant; it does not show any demise of the house; the possession of McQuade was the possession of his employer, and when he was dismissed from service, and the legal relation existing between them thereby put an end to, his right of occupancy was ended, and his longer remaining on the premises of his master was a trespass. Rex v. Stock, 2 Taunt. 339, 127 Eng. Reprint, 1109, 2 Leach, C. L. 1015, Russ. & R. C. C. 185, 11 Revised Rep. 605; Guest v. Opdyke, 31 N. J. L. 553; Doe ex dem. Hughes v. Derry, 9 Car. & P. 495; State, Edgar, Prosecutor v. Jewell, 34 N. J. L. 260. 'Many servants,' says Mansfield, Chief Justice, in

Rex v. Stock, 'have houses given them to live in, as porters at park gates. If a master turns away his servant, does it follow that he cannot evict him till the end of the year?' And in the same case Lord Ellenborough asks, 'if a man assigns to his coachman the rooms over his stable, does he thereby make him his tenant?' It is abundantly clear that the claimant, by his own showing, makes no case of which the justice could take cognizance under the act concerning landlords and tenants."

Reference has also been made to the statute providing for the action of forcible entry and detainer. It is well to bear in mind the purpose and scope of this action as so provided. Our statute was originally enacted by the territorial legislative assembly, and was construed by the supreme court of the territory of Dakota in Murry v. Burris, 6 Dak. 170, 42 N. W. 25. The court said:

"A comparison of the statutes of Iowa (Code of 1873) and the statutes of California of the same year will make it quite apparent that the person or persons who drafted our statute of forcible entry and detainer had before him or them the enactments of these two states, and that they borrowed from them such parts as they deemed suited to this locality, and rejected the other parts of those statutes which they deemed unsuited. They added new sections and provisos in place of those rejected, the effect of which will be apparent as we proceed. The first remarkable change is in the phraseology of the first subdivision above quoted. The Iowa subdivision reads as follows: (1) 'Where the defendant has, by force or fraud or stealth, entered upon the prior actual possession of another in real property and detains the same.' Iowa Code, 1873, § 3611. The material change, as will be observed, consists in placing the words 'of another' after the words 'real property' in our statute, instead of after the words 'actual possession,' as in the Iowa statute, whereby the meaning of the sentence is made to be (if the pronoun 'another' is made to qualify as its antecedent the noun immediately preceding, according to the usual rules of construction) that this action is maintainable where a party has entered by force, etc., upon the prior actual possession of another's real property, while the meaning of the Iowa statute must be construed to be that the proceeding is maintainable where a party by force, etc., has entered upon another's prior actual possession; and if this change was intentional, as it will be presumed to have been, and the word 'another' is made to qualify

its preceding noun as antecedent, then the difference in the two statutes is radical in this respect,—that, while the Iowa statute applies to all real property, and makes the party who enters by force, etc., upon his own as well as upon the real property of another, held adversely guilty of this offense, our statute makes the party guilty only who enters by force, etc., upon the real property of another; and, while it would be no defense in Iowa to allege and prove that the defendant was the owner of the premises alleged to have been unlawfully entered, it would be a perfect defense under our statute, which confines the remedy to lands of another so entered upon. If this were the only change made in adopting the Iowa and California statutes, the court might feel some hesitancy in employing this usual and natural construction of language, but our legislature did not stop here. It proceeded to emphasize this construction, and to enact in terms that the forcible entry and detainer act, in its enforcement by justices of the peace, should not extend to cases in which the title to real property should in any wise come in question. . . . These provisions are not found in the Iowa or California codes. It is an original provision. It is clearly intended to oust the jurisdiction of the justice when the defendant pleads title, and is intended to confine this remedy to that of protecting the private right of lawful possession, and to give the owner a summary remedy for recovering possession, from the intruder or wrongful holder of his real property. To hold otherwise would be to treat the words of the statute requiring the justice to certify the cause to the district court, 'whenever the title to or boundary of real property in any wise comes in question,' as idle and meaningless. The title to or boundary of real property could never come in question unless it was put in question by a contesting party, either by the pleadings or the evidence offered; and if the contesting party could not raise the question of title or boundary to real property, and if the legislature intended that the owner of real property should not be heard to assert his title in such cases, it was a work of supererogation for it to enact that 'whenever such title should come in question' the case should be certified to the district court. . . .

"We have no doubt, from a careful examination of the provisions of our statute upon forcible entry and detainer, as well of other sections of contemporaneous statutes as of those subsequently enacted, that the construction intended to be given by the legislature and the construc-

tion which should be given to it by the courts is that it is a civil remedy, designed to furnish an owner of real property—that is, one having a general or special title sufficient to give him the right of possession— a summary remedy to recover such possession from one who has wrongfully ousted him, and is a mere trespasser or intruder without color of right to the premises. . . .

"We cannot adopt the construction of this statute which is contended for by attorneys for the plaintiff, that any actual possession merely of real property is a sufficient basis for this action. That one party may enter upon the peaceable possession of another and wrongfully eject him, and that the person so ejected may not peaceably regain possession, but must resort to an action to expel the intruder, it cannot be that such wrongful intruder may invoke the power of the court to dispossess the rightful occupant who has merely reclaimed his own. If so, then the statute, in its construction, permits 'a party to take advantage of his own wrong,' in violation of a fundamental maxim of the law. . . . The statute was not intended to break down and destroy all the rights of possession and property that have come down to us from the earliest period of the common law."

Of course it does not follow that, because the plaintiff occupied the premises as an employee, defendant might, with impunity, summarily eject him. The plaintiff would of course, even upon a dismissal, be entitled to a reasonable time in which to vacate. And, of course, if defendant violated the terms of the contract of employment, the plaintiff would be entitled to recover from the defendant whatever damages he sustained by reason of defendant's breach of the contract. But the plaintiff has not sought to recover on the ground of breach of contract. The question of whether defendant had the right to, and did in fact, terminate the contract of employment, was expressly taken away from the jury's consideration. So was also, in effect, the question as to whether plaintiff was afforded reasonable opportunity to vacate. Under the instructions the jury was required to return a verdict for the plaintiff even though they might be of the mind that the defendant had the right to terminate, and had in fact terminated, the contract of employment; and even though plaintiff had been afforded every reasonable opportunity to vacate the premises. And, these questions could not

very well have been submitted under the complaint and plaintiff's theory of the case.

It follows from what has been said that the judgment and order appealed from must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

ROBINSON and BIRDZELL, JJ., concur.

ROBINSON, J. (concurring specially). I can conceive of no possible reason or excuse for commencing or prosecuting this action, and am surprised that one of our learned justices should dissent from the decision as formulated by Chief Justice Christianson. The dissent is based on a gross misconception of facts and the law governing the relation of master and servant. When a man employs a servant with a wife, and admits them to his house, and furnishes them their daily bread and butter, and pays them a monthly or daily wage, he does not thereby surrender to them the possession of his house. Their occupation is that of a mere temporary licensee, the same as that of the help in a hotel. They are bound to obey orders, and must obey an order to quit the house the same as an order in regard to their employment. It is no uncommon thing for the proprietor of a hotel to leave the business in charge of his help, while he gives general direction and pays the bills, and goes and comes as he pleases. On his return, after an absence of a day or a month, may the help say to him: We have possession of the hotel; you cannot enter; you cannot get actual possession, unless at the end of a lawsuit? If such were the law, it would be very dangerous for a man to employ help. Business is never done in that way.

The dissenting opinion errs in this way. It says: The plaintiff was in the actual, peaceable, and exclusive possession of the house; it was his home. That is clearly untrue; it was not his home, and he never had actual or exclusive possession for one minute. There never was a minute when defendant did not have the right to enter into his house and to give orders to the plaintiff. It is true, as said in the dissent: "The fundamental rights of a person in actual, peaceable, and exclusive possession of property *as his home* is well understood." But the plaintiff never was in possession of the house *as his home*. His possession and occupancy was not exclusive; it was not *as his home*. It was as

the *home of the defendant,* who paid the plaintiff his wages, furnished him his bread and butter for obeying orders. As the Scripture reads: The servant is not above his master. His service or employment does not make him the lord of his master or give him any possession as against his master. The rule is not changed by calling the master an employer and the servant an employee.

Really the case seems too plain to admit of any discussion. It is ruled by common law, common usage, and common sense.

GRACE, J. (dissenting). The facts are stated at length in the majority opinion. There is no need of a restatement of them.

As it appears from the statement of facts in the majority opinion, the plaintiff entered into the peaceable possession of the dwelling house upon the farm where he worked, and he was in actual peaceable possession of it when the defendant evicted him and his family therefrom, by force.

Defendant sent his wife and servant to the farm with written instructions, which were, in effect, to use as much force as was necessary to take possession of the premises, including the residence occupied by the plaintiff. This, the defendant had no right or authority, under the law, to do. He had no right nor authority to take possession of the premises at all excepting by a lawful method. He did, however, take possession by force, in violation of § 9069, Comp. Laws 1913.

Plaintiff brought an action for forcible detainer under that section, and for damages. The measure of damages in such case is as provided by § 7175, Comp. Laws 1913. He recovered a judgment for his damages, and that judgment should be affirmed.

BRONSON, J. I dissent. The majority opinion practically holds that a person who is in the actual peaceable and exclusive possession of a house that is his home and his fireside may be ejected therefrom, together with his wife, his children, his goods, and his chattels, by force, because, forsooth, he is a mere employee, and not a tenant. The employer is made both the judge and the executioner of what he may deem his rights to be. Such opinion does not state in terms, but does in effect, a rule of might instead of right, a rule of men instead of a rule of law. The record facts, as found by the trial court and the jury,

and as warranted by the evidence, disclose that the plaintiff was in the actual, peaceable, and exclusive possession of the house. It was his home; there he had his family, his goods, and chattels; the defendant was not in the actual possession of the house, and had not been for nearly a month. The defendant's home, his family, his goods, and chattels had been in the town of Solen. By force and a show of force, by breaking through a locked door, by threats of personal assault and even of burning, the defendant forcibly ejected the plaintiff, his family, his goods, and chattels from the premises, and seized the actual possession thereof, with his family and his goods and chattels. The fact that the plaintiff was then an "employee" in his own home, instead of a "tenant" in his own home, did not make the defendant in the actual possession of this home, any more than if he had been a tenant.

If the plaintiff were a tenant at will, the defendant might terminate the contract of leasing, with or without cause. If the plaintiff were an employee, the defendant likewise might terminate the contract of hiring. But, in either case, he had no right by force and by threats to forcibly seize the possession of a home of which he was then not in the actual possession. This is a case of seizing, and not of defending, a home.

The majority opinion quotes a portion of the instructions of the Honorable J. M. Hanley, the trial judge. His instructions were fairly given and ably stated. With clear and able legal analysis, he stated the residual issues of fact for the jury.

The majority opinion criticizes these instructions for the reason that the issues of whether the defendant had the right to, and did, terminate the hiring, and whether the plaintiff was afforded a reasonable opportunity to vacate the house, were expressly withdrawn from the consideration of the jury. This is not an action upon a contract, or for the breach thereof. It is not an action by the defendant in the nature of ejectment or for unlawful detainer. If such was the nature of this action, the criticisms might apply. This is an action for forcible intrusion and unlawful trespass.

The fundamental rights of a person, in the actual, peaceable, and exclusive possession of property as his home, are well understood. They are axiomatic in common-law jurisprudence. They need not be stated. If the defendant had terminated the hiring, whether with or without

cause, and if he had already given to the plaintiff a reasonable opportunity to vacate the house, he needed not personal militant force, nor the strong arm of might, to secure actually his legal right of possession. He did not need to hear, determine, and execute his own professed legal right. The law, the instrumentality of and for civilization, was ready and able to hear, to determine, and to enforce his rights, orderly, peaceably, and without legal wrong. In this case, if the plaintiff had been militant, personal injury, if not crime, might have occurred. The defendant, in such case, had an expeditious statutory remedy. Comp. Laws 1913, § 9069, specifically provides for the maintenance of a forcible detainer action where one by force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise. In such case no written notice to vacate the premises was required. The action could be maintained quickly and effectively in the justice's court. The defendant might invoke other legal remedies. This same statute, in another subdivision, permits likewise the maintenance of such action who "when a party entering peaceably upon real property turns out by force, threats, or menacing conduct the party in possession." Comp. Laws 1913, § 9069, subd. 2.

Section 7175, Comp. Laws 1913, to which the majority opinion refers, provides treble damages for forcibly ejecting or excluding a person from the possession of real property. Forcible entry is constituted if force is either actually applied, or if it is present and threatened, and justly to be feared. Wegner v. Lubenow, 12 N. D. 95, 104, 95 N. W. 442. It supplements well the forcible detainer statute.

These statutes, co-ordinating with the fundamental law applicable, negative entirely the thought that forcible intrusion and physical force are necessary or legal to secure the actual and rightful possession of a home, which is in the actual, peaceable, and exclusive possession of another.

No quarrel is to be had with the authorities cited in the majority opinion. The dispute is over their applications. These authorities do not assert the right of force, instead of the rule of law, to secure the actual possession of a home that is then in the *actual, peaceable and exclusive possession of another.*

The majority opinion, upon the principle that the possession of an employee is the possession of his master, concludes, in legal effect, that the master retains occupancy, and may use physical force to enforce his rights as an occupant. The majority opinion might have cited as more in point the following cases: Napier v. Spielmann, 127 App. Div. 567, 111 N. Y. Supp. 983, affirmed in 196 N. Y. 575, 90 N. E. 1162; Kerrains v. People, 60 N. Y. 221, 19 Am. Rep. 158; Haywood v. Miller, 3 Hill, 90. Even these cases may be distinguished from the case at bar. This is an action under the statutes above quoted for forcible intrusion and for the recovery of treble damages. The purpose of such a statute is to protect the actual, peaceable possession, whether right or wrong, and to prevent parties resorting to physical force from retaining such possession except in a legal way. Iron Mountain & H. R. Co. v. Johnson, 119 U. S. 608, 30 L. ed. 504, 7 Sup. Ct. Rep. 339. In such action it is unnecessary to prove title or right of possession. It is sufficient to show that the party was in actual, peaceable possession, and was forcibly ejected. In such case a judgment of recovery is not a bar to proper action to recover the possession. Waterbury v. Deckelmann, 50 App. Div. 434, 64 N. Y. Supp. 60; Compton v. The Chelsea, 139 N. Y. 538, 34 N. E. 1090; Riverside Co. v. Townshend, 120 Ill. 9, 9 N. E. 65; see notes in 32 L.R.A.(N.S.) 51; and 8 L.R.A.(N.S.) 426. The evident purpose of the statute is to preserve the peace by prohibiting those not in the actual peaceable possession of real estate from resorting to physical force, threats, or menacing conduct to gain possession from the party in the actual peaceable possession of property. See note in 32 L.R.A.(N.S.) 51. Even a trespasser may be protected by the statute when his occupancy has ripened into an actual peaceable possession. Schwinn v. Perkins, 79 N. J. L. 515, 32 L.R.A. (N.S.) 51, 54, 78 Atl. 19, 21 Ann. Cas. 1223.

The majority opinion wholly fails to distinguish between the right of a person to defend his *actual* possession and to eject intruders or persons interfering with such possession, and the right of a person who is not in the actual possession, although entitled to such possession, to eject by force one who is peaceably and exclusively in such actual possession.

The principle asserted by the majority opinion is fraught with grave

consequences when it recognizes by legal rule, as, in my opinion, it does in this case, the right of might and the rule of force in determining and in securing the possession of the home.

GRACE, J., concurs.