JAMES A. CAMPBELL V. FRANK A. FAXON *et al.*,
*as Partners, etc.*

No. 14,606.    (85 Pac. 760.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Master and Servant—Termination by Death.* A contract that one party was to be the managing agent of a drug-store owned by another, which might be terminated at any time by either party, and in which it was agreed that instead of a salary the agent's compensation should depend upon the extent and success of the business, created a personal relation which was dissolved by the death of one of the parties, and was without binding effect upon the administrator of his estate.

2. ADMINISTRATORS — *Conducting Decedent's Business without Authority—Liability.* In the absence of a testamentary direction an administrator of the estate of a deceased person cannot carry on the business of the decedent, and if he does so without authority he will be individually bound for the contracts of the business.

Error from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed May 12, 1906. Affirmed.

STATEMENT.

ACTION by the firm of Faxon, Horton & Gallagher to recover for drugs purchased for the "Elk Pharmacy," in Kansas City.   C. F. McCormick owned a drug-store and employed R. E. Ela, jr., as his agent and manager of the store.   A few months afterward McCormick died; and J. A. Campbell was appointed administrator of the estate.   Campbell took possession of the drug-store, inventoried the stock, and agreed with Ela to continue the business upon the same plan as it had been conducted in McCormick's lifetime.   The business was continued for about six months, during which time the goods in suit were purchased, but as it was not a success it was discontinued and the stock of drugs was sold to Mrs. McCormick.   The written agreement

under which the store was managed by Ela prior to McCormick's death is as follows:

"Know all men by these presents, that R. E. Ela, jr., of Kansas City, Kan., party of the first part, and C. F. McCormick, of Kansas City, Mo., party of the second part, have entered into this agreement on the 1st day of February, 1903, witness as follows:

"That R. E. Ela, jr., party of the first part, and C. F. McCormick, party of the second part, have entered into a contract this 1st day of February, 1903, that R. E. Ela, jr., is to be the manager of said drug-store now owned by C. F. McCormick, located in Kansas City, Kan., on lot two (2), block three (3), No. 1932 Walnut Park addition. It is agreed between the parties that R. E. Ela, jr., is to be in full charge of the store and have full control of its management and to be its manager; and it is further agreed between the parties to this contract that C. F. McCormick is the sole owner and proprietor of all stock, merchandise and fixtures in said store. It is further agreed between the party of the first part and the party of the second part that the stock of goods shall be kept up to the invoice price which the goods invoiced on or about the 1st of October, 1902; and it is further agreed that the amount of stock, including medicines, drugs, sundries, fixtures, other goods, and merchandise, shall always be equal and amount to invoice price which the goods invoiced on or about the first days of October, 1902. It is further agreed and consented on the part of R. E. Ela, jr., that he will put in all of his time, energy and efforts to control such business, and that he will not engage in any other business while this contract is in effect, but give his whole time and attention to the management of the store now subject of this contract.

"It is further agreed that R. E. Ela, jr., shall have full charge of said store, and that R. E. Ela, jr., of the first part, out of the proceeds of the business shall pay all expenses in operating the store, including light, fuel, water, and insurance. It is further agreed that R. E. Ela, jr., is to pay C. F. McCormick, party of the second part, eight per cent. per annum on five thousand ($5000) dollars; to be paid on the 25th of each month. The first payment is to be paid February 25, 1903. The amount to be paid each month is thirty-three (33⅓) dollars, and the payment of thirty-three (33⅓) dollars is to be paid as long as this contract is in force.

R. E. Ela, jr., is to have all of the profits the store makes after paying the eight per cent. per annum monthly payments to C. F. McCormick, of the second part, and that the party of the first part shall draw no salary whatever.

"It is further agreed by and between the parties hereto that the party of the second part shall have the privilege and reserve the right to put an end to and terminate this contract any time if he believes the business is not running satisfactory. It is further agreed on the part of the party of the first part that the party of the second part [shall have] the right to sell, convey and dispose of this stock of merchandise at any time that he can secure a buyer for the same, and also and take immediate possession of said stock when he has found a buyer.

"It is further agreed by party of the second part that R. E. Ela, jr., is to have an option on buying said stock if it is to be sold or disposed of; option good for thirty days.

"It is further agreed between party of the first part and party of the second part that second [party] can make a weekly inspection of the books and examine the stock and demand an accounting at any time desired.

"It is further agreed that R. E. Ela, jr., party of the first part, and C. F. McCormick, party of the second part, that first party can terminate this contract at any time he desires.

"IN WITNESS WHEREOF, Parties hereto set their hands and affix their seal, on the day and year first above written.             R. E. ELA, JR.
                                  C. F. McCORMICK."

The goods purchased of plaintiffs under the Campbell régimé were not paid for, and hence this action was brought and a recovery had against Campbell.

*Ryan & Ryan,* for plaintiff in error.

*Austin & Austin, Karnes, New & Krauthoff,* and *C. W. Reeder,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: The material facts in the case are not in dispute, but there is a contention as to the relation of J. A. Campbell to the drug business and his lia-

bility for the contracts made while he was conducting it. These depend mainly upon the interpretation and obligation of the McCormick-Ela contract, under which Campbell continued the business. At an early stage of the litigation there appears to have been some claim that the contract created a partnership relation, but all parties now agree that McCormick and Ela were not partners, and Campbell therefore does not stand in such relation and cannot be held liable as a partner. He does contend that he was warranted in continuing the business, and that he did so without personal liability because Ela's contract did not terminate with McCormick's death.

It will be observed that it was a personal contract, which ended with the life of McCormick. It was expressly stipulated that McCormick should be the sole owner of both goods and fixtures, and, while Ela was given the management of the store, he was not to have any ownership or interest in it. Instead of receiving a fixed salary his compensation was to be regulated by the extent of the business done; that is, he was to receive as compensation all above a fixed amount of the earnings which was to be paid monthly to McCormick. Aside from this there was the specific provision that the contract could be terminated at any time by McCormick, and if McCormick was not bound to continue the relation with Ela it is certain that no obligation rested upon Campbell to do so. It is clear, therefore, that the contract was dissolved by the death of McCormick, and that it had no binding effect on Campbell. (*Marvel v. Phillips,* 162 Mass. 399, 38 N. E. 1117, 26 L. R. A. 416, 44 Am. St. Rep. 370; *Smith v. Preston,* 170 Ill. 179, 48 N. E. 688; *Schultz & Co. v. Johnson's Ad'r,* 5 B. Mon. [Ky.] 497; *Dickinson v. Calahan's Administrators,* 19 Pa. St. 227; *Bland's Administrator v. Umstead,* 23 Pa. St. 316; 2 Woerner, Am. Law of Adm., 2d ed., § 328.)

When Campbell renewed the contract with Ela for a

continuance of the business he made himself individually liable for such obligations as his agent should contract.    Upon his appointment as administrator the legal title of the stock of goods vested in him, and it became his duty to sell it and administer the proceeds as the statute provides.    He had no authority to continue and carry on the drug business for the estate, and contracts made by him in the conduct of the business bind him personally, and not the estate.    A representative expressly authorized by a will to carry on the business of the testator for a time may do so under the direction of the probate court.    One so authorized is not bound to incur the hazard, but if he does the contracts made will be his own, and he will be individually bound by them.    In volume 2 of the second edition of Woerner on the American Law of Administration, section 328, it is said:

"The executor carrying on the business under the will is personally liable to the persons with whom he deals as such, but they have a right to indemnify themselves for the payment of debts thereby incurred, and an equitable right arises to the trade creditors to resort to the estate, if their remedy against the executor is unavailable."

Here there was no will, and the administrator's only duty with respect to the business was to wind it up. In volume 18 of the Cyclopedia of Law and Procedure, at page 241, it is said:

"The general rule is that neither an executor nor an administrator is justified in placing or leaving assets in trade, for this is a hazardous use to permit of trust moneys; and trading lies outside the scope of administrative functions.    So great a breach of trust is it for the representative to engage in business with the funds of the estate that the law charges him with all the losses thereby incurred without on the other hand allowing him to receive the benefit of any profits that he may make, the rule being that the persons beneficially interested in the estate may either hold the representative liable for the amount so used, with interest, or at their election take all the profits which the repre-

sentative has made by such unauthorized use of the funds of the estate."

(See, also, *Willis et al. v. Sharp,* 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493; *Lucht, Adm'r, v. Behrens,* 28 Ohio St. 231, 22 Am. Rep. 378; 1 Williams, Executors, 7th Am. ed., 791; Schouler's Ex. & Adm., 2d ed., § 325; 11 A. & E. Encycl. of L. 974.)

Ela was not employed by Campbell to wind up the business of the estate, but to carry it on in the same manner and upon the same plan in which it had been conducted during McCormick's lifetime. It was not carried on in pursuance of an order of the court or other authority, and hence Campbell took the risk of any loss that might occur, and made himself individually liable for the purchases of goods and other contracts made by his agent.

We find no error in the record, and therefore the judgment is affirmed.

All the Justices concurring.