WILLIAM R. HOMAN, APPELLANT, V. OAK C. REDICK ET AL., APPELLEES.

FILED DECEMBER 4, 1914.    No. 17,918.

1. **Principal and Agent: CONTRACTS: POWER COUPLED WITH INTEREST.** Where an office is furnished to an agent employed to manage property and collect rents, rent free, as a part of the compensation for his services, the relation of landlord and tenant does not exist, the occupancy is merely ancillary to the service, and the agent does not take his power coupled with an interest.

2. **Contracts: PERSONAL SERVICES: TERMINATION BY DEATH.** As a general rule a contract for personal services is dissolved by the death of either party.

3. ———: ———: **BREACH: LIABILITY OF REPRESENTATIVES.** If the contract is so far personal that the representative of one of the

parties to it is not responsible in damages for refusing to complete its performance, the representative of the other party is not responsible for a like failure.

4. ———: ———: ENFORCEMENT: RATIFICATION BY EXECUTORS. A contract was made that A should manage and control a number of parcels of improved real estate belonging to B for the. term of five years, should collect the rents, and make repairs, and pay the money remaining in his hands on the 15th of each month to B. It contained the provision: "That the covenants in this contract shall succeed to and be binding upon the respective heirs, executors, administrators and assigns of the parties hereto." After A had entered upon the performance of his duties, B died, having by will devised the property to his executors and trustees. *Held*, That since such a contract could not be enforced as against the heirs, executors and assigns of A, it was equally unenforceable against the personal representatives of B. *Held*, further, that the fact that the executors permitted A for some time after the death of B to manage the property and collect the rents did not constitute a ratification and adoption of the contract.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed*.

*Morsman, Maxwell & Thompson* and *Will E. S. Thompson*, for appellant.

*Francis A. Brogan, contra.*

LETTON, J.

Action to recover for breach of a contract for personal services. A demurrer to the petition was sustained and the cause dismissed. Plaintiff appeals.

In substance, the petition alleges that the plaintiff is engaged in the real estate and rental business at Omaha; that John I. Redick in his lifetime was the owner of a large amount of real estate in the city, which was rented to various tenants; that on December 8, 1904, an agreement was made between plaintiff and Redick, whereby plaintiff was employed for five years from January 1, 1905, to look after this real estate, collect the rents, make repairs, pay bills, and have the general supervision of the property, and as compensation for his services he was to receive 3 per cent. of the rents collected and, in addition,

office rent free at 1517 Farnam street, Omaha; that plaintiff under the contract proceeded to take charge of the property and carry out its terms.; that the total rentals received during 1904 amount to $29,000. It is further alleged that Redick died on April 2, 1906, leaving a will by which the defendants were constituted trustees and executors of his estate, and the entire title, control and management of the real estate passed to them for the purposes of the trust; that after Redick's death plaintiff continued in charge, control and supervision of the property and collected rents as before, making monthly reports to the trustees until August 1, 1908, when they attempted to cancel the contract, and took the charge, control and supervision of the property away from him, and refused to allow him to collect the rents and compelled him to vacate his office. The amount of money then collectable for rents is alleged; that plaintiff was fully able and willing to continue and carry out the obligations of the contract on his part; that 3 per cent. is below the general and customary fee for such services; that he accepted the contract at that price on account of the length of time it would run and the volume of business; that at the time the property was taken from his control the rent amounted to $5,800 a month; that if the contract had not been broken he would have collected that sum, and his compensation would have been $174 a month; and that his office rent was reasonably worth the sum of $60 a month. He prays judgment for $4,000 as damages. A copy of the written contract is attached. This contains the further agreement "that the covenants in this contract shall succeed to and be binding upon the respective heirs, executors, administrators and assigns of the parties hereto."

Appellant bases his right to a reversal upon three propositions: (1) Under the terms of the contract the plaintiff was vested with an agency or authority coupled with an interest in the subject matter. (2) If the contract did not create an agency coupled with an interest, yet it was binding upon the defendants to the extent that, if they re-

fused to be bound by it and discharged the plaintiff, they were liable in damages. (3) Defendants ratified and adopted the contract.

1. It is a general principle of the law of agency that upon the death of the principal the contract of agency comes to an end, since the agent, who is merely acting for another, cannot act for the principal when he has ceased to exist. This rule, however, is subject to various exceptions and modifications growing out of the facts in each case. It is claimed that the facts alleged with reference to the occupancy of an office, rent free, brings the case within one of these exceptions, for the reason that the agent took the power to act coupled with an interest in the premises by reason of his right to the possession of real estate. The contract recites that the right to occupy the office, rent free, is merely compensation for the agent's services in addition to the 3 per cent. specified. It seems clear that upon the termination of the service the right to occupancy ceased; that the contract did not create the relation of landlord and tenant; and that no interest in real estate passed to plaintiff by reason of the agreement. The relation between the parties was principal and agent, and not landlord and tenant. Contracts for services allowing the occupancy, rent free, of premises to the person employed are very common, and courts generally take the view stated. *School District v. Batsche,* 106 Mich. 330, 29 L. R. A. 576; *Davis v. Williams,* 130 Ala. 530, 54 L. R. A. 749; *McQuade v. Emmons,* 38 N. J. Law, 397. An exhaustive discussion of this point may be found in note to *Bourland v. McKnight & Bro.,* 4 L. R. A. n. s. 698, 707 *et seq.* The real test seems to be whether the occupation of the premises is connected with the purposes of the service and was obtained by reason of the contract for the purpose of facilitating the business of the principal. *Mitchell v. Morris Canal & Banking Co.,* 31 N. J. Law, 99. There is a clear distinction between the facts alleged and the facts in *Volk v. Stowell,* 98 Wis. 385, cited by plaintiff. The defendant in that case was to receive a certain sum per month

besides 15 per cent. of all increase of stock born on the farm, and also 15 per cent. of the farm products, and the court was of the opinion that the contract was somewhat of the nature of a lease and conferred upon the plaintiff many of the rights of a tenant.

2. Is the contract binding upon the executors and trustees to the extent that, if they failed to carry it out, they are liable in damages? The compensation of plaintiff was fixed at 3 per cent. of the amount collected. The contract required him to render a monthly statement to Mr. Redick "showing in detail rents collected, bills paid, and turn over to said first party on the 15th of each month all moneys remaining in his hands at that time belonging to said first party." The compensation for services performed was evidently deducted each month, so that, both at the time of Mr. Redick's death and at the time the trustees refused to allow the plaintiff to continue further to manage the property and collect rents, he had been fully paid for services to that time rendered. The claim in the petition is for compensation which he might have earned under the contract, if he had been permitted to carry it on until the expiration of the five-year period.

The principle which applies is laid down in *Babcock v. Goodrich,* 3 How. Pr. n. s. (N. Y.) 52: "As a general rule, if a contract is so far personal that the representative of one of the parties to it is not responsible in damages for refusing to complete its performance, the representative of the other party is not so responsible for a like failure, in the absence of evidence of intention to bind the representative. Evidence of such intention may be furnished by the terms of the contract, or implied from its nature." In the present case, would the death of plaintiff have bound his "heirs, executors, administrators or assigns" to carry on the stewardship, or could they insist upon such right against the wishes of the other party? Would a court compel specific performance of the contract upon their part? If these queries must be answered in the negative, and the personal representatives of the plaintiff

would not be bound to perform in case of his death, how can it be said that in case of the death of the other contracting party his representatives are bound? Could it have been the intention of Mr. Redick to entrust the care of his valuable property and the collection of a large sum of money each month to unknown persons, who might perhaps be of doubtful business ability or integrity? Are not the relations so purely personal that the death of either party puts an end to them? Must not the contract be mutual? These questions are discussed in *Lacy v. Getman*, 119 N. Y. 109, 6 L. R. A. 728, and it is held that the death of the servant dissolved the contract, and that the death of the master had the same effect. See, also, note to *Mendenhall v. Davis*, 17 Am. & Eng. Ann. Cas. 179 (52 Wash. 169).

Considered without relation to the agreement in the contract that its terms should be binding upon the representatives of the parties, the death of Redick terminated and dissolved the relation of principal and agent, and no recovery could be had against his executors and trustees for failure to permit the plaintiff to carry on the contract until its expiration. 2 Woerner, American Law of Administration (2d ed.) sec. 328, p. *688; *Kimmell v. Powers*, 19 Okla. 339; *Campbell v. Faxon*, 73 Kan. 675, 5 L. R. A. n. s. 1002. Does the fact of this express stipulation change the situation of the parties? Suppose that Mr. Redick had died intestate and his property had been distributed to a number of heirs, would each of the heirs take it subject to the provisions of the contract? Could they involuntarily be made principals and the plaintiff their agent? Is such a contract in the nature of a charge against an estate so that whoever takes it by descent, or by purchase, takes it burdened with the obligation to employ the plaintiff? Or, in case of plaintiff's death, must the then owners employ his heirs, executors, administrators or assigns to manage the property and collect its revenues? These queries suggest the impracticability of applying such a provision to a contract for services. The very nature of the contract

does not permit of the enforcement of such an agreement. No doubt it may be carried out voluntarily by the consent of the parties; but, in such case, it is virtually the making of a new contract. If the agent dies, the owner of the property may accept as a new agent one of the classes of persons named in this clause; or, if the principal dies, his heirs, executors or assigns may be willing to accept the services of the agent, upon the same terms and conditions as specified in the contract. In such case the person so accepted is vested with authority by virtue of a new relation entered into, and not by reason of the survival of the contract. We have examined the cases cited by the plaintiff upon this point, but we find features in each one which clearly distinguish it from the facts in this case. Where such recovery is allowed, the contract has usually been partly performed without compensation, and has been of such a nature that the peculiar knowledge or skill of the agent has been exerted for the benefit of the estate to such an extent as to increase its corpus or enhance its value, and loss would occur if he had ceased to act. *Wylie v. Coxe,* 15 How. (U. S.) 415, and *Hawley v. Smith,* 45 Ind. 183, are typical cases.

3. What has just been said in the discussion of the second point answers the contention that the defendants, by allowing the plaintiff to continue to collect the rents and manage the property for them for a portion of the time after the death of Mr. Redick, have ratified and adopted the contract. The trustees, by accepting the services of plaintiff, did so, not because they were bound to do so by any provision in the contract, but voluntarily. They allowed him to retain payment for his work to the same extent and in the same manner as specified in the contract. If they had accepted the service and refused to pay, they would have been liable upon an implied contract for the reasonable value thereof. Both parties tacitly seemed willing to consider the terms named in the contract as a proper remuneration. We cannot take the view that the fact that the trustees continued to allow plaintiff to act had the

effect to cause them to ratify or adopt the contract so as to bind the trustees to accept plaintiff's services until the time of its expiration.

The judgment of the district court is

AFFIRMED.

REESE, C. J., SEDGWICK and HAMER, JJ., not sitting.