## TOWNES v. TOWNES.

(Circuit Court of Appeals, Fifth Circuit. February 11, 1921.)

No. 3587.

1. **Vendor and purchaser ⊜⇒44—Evidence held to show fiduciary relation between brothers, parties to contract.**

In a suit to set aside a contract for the sale of land by complainant to his brother, evidence that the brother had always managed the land for complainant, and that by the contract for sale they entered a partnership for the operation of the land until the sale, *held* to show a fiduciary relationship between the parties.

2. **Vendor and purchaser ⊜⇒44—Burden is on fiduciary, purchasing for inadequate consideration, to show fairness of transaction.**

In a suit to cancel a contract for the sale of land, where the evidence showed the purchaser stood in a fiduciary relation to the vendor and that the contract price was inadequate, the burden is on the defendants affirmatively to prove the fairness of the transaction, and to show a full disclosure by the purchaser and absence of undue influence, and the fact that such evidence cannot be produced because of the purchaser's death does not make the finding for complainant without support in the evidence.

3. **Vendor and purchaser ⊜⇒58—Contract for partnership and sale of land held interdependent.**

Where an owner of land, which had been managed for him by his brother, entered into a contract, before leaving for overseas military service, whereby a partnership for the operation of the land was formed between the two brothers, and the owner agreed to sell the land to the other brother at a stated price five years after the date of the contract, the provision for partnership and sale of the land were dependent on each other, so that the failure to perform the partnership agreement, resulting from the death of the other brother, released the owner from his contract to sell.

4. **Contracts ⊜⇒173—Dependency of covenants determined by intention of parties.**

Whether or not the different provisions of a contract are dependent on each other is to be determined by ascertaining the intention of the parties, and not by the application of technical rules of law.

Appeal from the District Court of the United States for the Northern District of Mississippi; Edwin R. Holmes, Judge.

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by Robert E. Townes against Evelyn Pope Townes, as guardian of Charlie Townes, a minor, and individually, to set aside a contract for the sale of land. Decree for complainant, and defendant guardian appeals. Affirmed.

A. F. Gardner, of Greenwood, Miss., F. M. Yerger, of Clarksdale, Miss., and G. T. Fitzhugh, of Memphis, Tenn., for appellant.

William H. Fitzhugh, of Memphis, Tenn., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The complainant, Robert E. Townes, a citizen of Tennessee, filed a bill in equity in the United States District Court for the Northern District of Mississippi against Evelyn Pope Townes, the widow of Charles L. Townes, Jr., deceased, and their minor child, Charlie Townes, born January 25, 1919, both alleged to be citizens of Mississippi, praying to have set aside, as a cloud upon the title thereto, a contract entered into on July 12, 1917, between himself and his brother, Charles L. Townes, which provided, among other things, for a future sale to be made by said Robert E. Townes to said Charles L. Townes of certain property acquired by the said Robert as a devisee under the will of his father, C. L. Townes, Sr.

The record showed that Charles L. Townes, Sr., died testate in 1910 and by his will divided his real estate consisting of cotton plantations among his widow and their three children, to wit, Robert E. Townes, Charles L. Townes, and another child, Mary Harper Townes, now Mrs. N. Hill Martin. At the death of the father the son Charles was 21 years of age and his brother Robert 7 years younger. Charles was very mature for his years; Robert an impulsive boy. Charles took charge of and managed, exclusively, the entire property. From the time the plaintiff was 8 years old he had resided at Memphis, Tenn. The planting operations of Charles were successful, and resulted in a considerable income for the complainant. Complainant went to Cornell University, and after graduation went into business as a clerk in Memphis, Tenn. He was disposed to be extravagant, and to spend much more money than his brother Charles thought proper, and Charles frequently remonstrated with him on this subject. It appears, however, that he did not exceed the sum derived from his income from his lands, and that a substantial sum to his credit was at all times in the hands of Charles. While Robert's mother was his guardian, under the will of his father, she has been an invalid for several years, and his affairs were managed by his brother Charles.

In the spring of 1917, complainant, being 21 years of age, volunteered for service in the war against Germany, joining the Aviation Corps of the United States Army, and was ordered to Rantoul, Ill., for training. It appears that in June, 1917, Charles went to Illinois, to Rantoul, and presented to his brother a contract creating a partnership for the planting of said land, together with the adjoining lands of Charles, which was identical in every respect to the contract in this case, except that it recited that in consideration of the advantages and benefit to accrue to him from the partnership agreement the said Robert gave

to said Charles an option to purchase said lands at any time after June 25, 1920, and prior to June 25, 1922, at the sum of $125,000, payable in the same manner as was provided in said contract of July 12, 1917. Robert did not then sign it, saying he wished to consider it. He afterwards brought it back with him to Mississippi signed, but did not deliver it to his brother, nor does it appear in the evidence that the brother was informed that it had been signed.

About the 12th of July, Robert returned to Memphis and made a trip to Mississippi to visit his brother. While there he executed, on July 12, 1917, a contract creating a partnership between himself and Charles from January 1, 1917, for the term of five years, for the operation of complainant's lands, together with certain other adjoining lands of said brother—the entire management and all powers of the partnership being vested in his said brother; said contract further reciting that for a valuable consideration, then receipted for, he agreed to sell and to execute and deliver and to give a good and lawful warranty deed on June 15, 1922, to said land and to all the personal property of all sorts situated thereon or owned in the partnership agreement for the consideration of $125,000, $25,000 to be paid on said 15th of June, 1922, and the balance of said consideration of $100,000 in 10 annual equal installments from January 1, 1924, to January 1, 1933, inclusive, with interest from June 15, 1922, at 6 per cent. per annum, payable annually, the plaintiff to retain the usual vendor's lien upon the property conveyed, and providing for the right of said C. L. Townes, to pay off any or all of said notes at any time.

The plaintiff averred that the property described was worth at the time $275,000; that no explanation was made to him of the value of the property; that plaintiff signed the contract without knowledge of the value of the personal property, and with only a vague idea of the value of the land, because his brother not only requested his signature, but accompanied his demand with a threat that he would cease operating complainant's property unless this agreement was made. The plaintiff shortly thereafter was sent for overseas service to France, and was serving there when his brother Charles died on October 15, 1918.

It appeared that subsequent to the death of said Charles L. Townes the widow, Mrs. Evelyn Pope Townes, executed to complainant an instrument by which she granted, bargained, sold, released, quit-claimed, and conveyed to the said Robert Townes all of her rights to purchase said property under said contract of July 12, 1917. It was admitted on the trial that the release was executed, and that the averment of her answer denying its execution was inadvertently inserted.

The evidence in the case showed that the deceased, C. L. Townes, was very mature for his years, of a dominant disposition, and an excellent business man; that he was buying up lands in the vicinity; that in June, 1913, he had purchased the lands derived by his sister under her father's will, with all personal property thereon, for $95,000; that on January 1, 1917, he had purchased 826.56 acres from Mrs. Avery for the sum of $82,125. There was evidence that this land was inferior to the Robert Townes land. Evidence was introduced to

the effect that the land was worth from $150 to $200 per acre. No particular intimacy between the two brothers was shown. It was shown that Robert was a free spender, and was constantly after his brother for money, the proceeds of his rents of the property, and that the brother Charles was constantly remonstrating with him that he was spending his money foolishly.

The District Court, before whom the case was tried, rendered a decree declaring said contract null and void for the reasons set out in the bill, in so far as it undertakes to obligate the complainant to sell the lands and personal property described in said contract, and revoking said contract as a cloud upon complainant's title to said property. The appellant insists that the decree is without support in the evidence; that no confidential relation between the parties is shown, and no such inadequacy of price as to raise a presumption of fraud. The appellee insists that the decree is correct; that the evidence was sufficient to show a confidential relationship between the parties; that the agreement to sell was for an inadequate price; that this made a prima facie case entitling the complainant to a cancellation of the agreement, and put the burden on the defendant to show the entire circumstances of the sale, and to affirmatively establish that Charles had fully disclosed all facts in his knowledge respecting the property and its value, and had not exercised any undue influence to induce the making of the contract, and that the absence of any proof as to what transpired between the parties rendered the contract liable to be disavowed and set aside by complainant.

There is no suggestion in the record that there was any desire on the part of Robert to sell. It indicated that the agreement for the sale was due to the insistence of Charles, and that, whether the execution of the agreement to sell was made a condition to the agreement on the part of Charles to run the place under the partnership agreement for five years, such agreement was the inducement to the entering into the agreement to sell the place at the expiration of said partnership term. Charles died, as stated, on October, 15, 1918, a little over a year after the execution of said agreement. The partnership agreement, of course, came to an end by the death of such partner and the performance of the same, to wit, the management of said place during said period by the personal efforts and skill of said Charles L. Townes, became impossible.

[1] While the facts in the case are meager as to what transpired between the brothers, one being dead and the other being rendered incompetent as a witness, there is enough to sustain the finding of the lower court as to the existence of a fiduciary relationship between the parties. They were not only brothers, but partners in respect to the farming operations conducted on these lands, and in this partnership Charles had exclusive control; the younger brother being absent and exercising no share in the management of the partnership affairs. There was evidence tending to show that Charles had become, as to this property and its management at least, the head of the family; also that he was desirous of becoming the exclusive owner of the lands. The proof is also sufficient to sustain the finding that the price named in the agreement was much less than the then market value of the property.

[2] The finding of the District Court as to the confidential relations of the parties and as to the inadequacy of price, being warranted by the evidence, makes a prima facie case of invalidity of the transaction, even had this agreement to make a sale been consummated by the execution of a deed, and puts the burden of proving its fairness, and of affirmatively showing a full disclosure of all facts known to him, on the vendee, and an absence of any undue influence to induce the agreement to sell. The absence of this proof in this case, though not possible because of the death of Charles, leaves the case where the lower court cannot be said to have found for the complainant without evidence to support the decree. Pomeroy, Eq. Jur. (4th Ed.) §§ 955, 956; Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732.

[3] There is also another reason why we do not think the decree in this case contains reversible error. The contract is not an executed one, by which a sale of this property has been accomplished, but an executory contract, providing for the management for a term of years, during which no title, legal or equitable, was vested by Robert in Charles, with an agreement that at the expiration of the term one partner will sell to the other on terms involving the future conveyance of the land on a long credit for the greater part of the purchase price. The proposed agreement for the partnership with an option to buy recited that, in consideration of the "advantages and benefits" secured by Robert by the partnership agreement, the option to purchase was given. The agreement entered into, after providing for the same partnership, recited that "for a good lawful and valuable consideration unto the said Robert Edward Townes, the receipt of which is hereby acknowledged," the agreement to sell on June 15, 1922, was made. The only consideration then received for the making of this agreement to thereafter sell appears to have been the "advantages and benefits" derived from securing the partnership agreement providing for the management of this plantation for a term of years by the peculiar skill of Charles.

"Primarily the question whether a contract is entire or severable is one of intention, which intention is to be determined from the language which the parties have used and the subject-matter of the agreement. A contract may both in its nature and terms be severable and yet rendered entire by the intention of the parties." 13 Corp. Jur. p. 562.

[4] As the Supreme Court of Ohio has said, quoting from the opinion of Parker, J., in Johnson v. Reed, 9 Mass. 83, 6 Am. Dec. 36:

" 'They [the modern English and leading American decisions] show a disposition on the part of the Judges to break through the bonds which some of the old cases had imposed upon them and to adopt what Lord Kenyon, in one of the cases, calls the common sense doctrine—that the true intention of the parties, as apparent in the instrument, should determine whether covenants are independent or conditional instead of any technical rules of which the parties were totally ignorant, and the application of which would in most cases utterly defeat their intention.' This is, in our judgment, the proper rule of construction." The Wellsville v. Geisse, 3 Ohio St. 333, 337. See also Lowber v. Bangs, 2 Wall, 728, 736, 17 L. Ed. 768; Gray v. Hinton (C. C.) 7 Fed. 81, Coos Bay Wagon Co. v. Crocker (C. C.) 4 Fed. 577; Sixta v. Ontonagon Valley Land Co., 157 Wis. 293, 147 N. W. 1042, 1045.

The party thereto who was to contribute his personal skill and peculiar knowledge of the property to its management, and to whom this credit was to be extended, died intestate. We cannot but think that the contract for the management of the place until June 15, 1922, and to then execute a deed, is an entire one, and that the death of Charles rendered impossible the carrying out of an essential part of the contract by which this agreement to sell in the future was made, and releases Robert from the obligation to sell. Homan v. Redick, 97 Neb. 299, 149 N. W. 782, L. R. A. 1915C, 601.

We conclude that, in view of all the facts of the case, the decree of the court declaring the contract to be now null and void contains no reversible error, and the decree is therefore affirmed.