**In re Estate of John G. Wilmes, Deceased.
Claim of Martin Levy, Appellant, v. Helen Wilmes, Administratrix, Appellee.**

**Gen. No. 30,230.**

1. AGENCY—*revocation of agency by death.* A contract creating a power or agency is terminated and the power or agency revoked by the death of either party to the contract, unless the power or agency created by the contract is coupled with an interest.

2. AGENCY—*prerequisites to existence of agency coupled with interest.* To constitute a power or agency coupled with an interest sufficient to prevent the revocation thereof by the death of a party to the contract creating them, there must be vested in the person to whom the agency or power is given a property in the subject thereof so that he may deal with it in his own name, as distinguished from the proceeds or result of the exercise of the agency.

3. MASTER AND SERVANT—*termination of contract for services by death of master.* Where a contract for services is so far mutual in its terms, express or implied, as to involve the obedience or following of directions by the employee and the giving of such directions or orders by the employer, the death of either party will terminate it.

4. MASTER AND SERVANT—*contract of employment to run hotel as creating interest sufficient to prevent termination by death of employer.* A contract whereby one was employed to manage a hotel for a year, for an agreed compensation per month including an allowance for room, laundry and pressing clothes, and at the end of the year a bonus of $1,000 if he "ran the hotel successfully," held not to create a power or agency coupled with an interest such as would prevent termination of the contract and revocation of the agency upon the death of the employer before the expiration of the year.

5. DAMAGES—*necessity for showing by wrongfully discharged employee of earnings during contract period following discharge.* Where a claimant against an estate, seeking damages for his alleged wrongful discharge by the administratrix of his employer in violation of the terms of his contract of employment, failed to show what, if anything, he had been able to earn during the contract period following his discharge, a judgment disallowing his claim was proper.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Affirmed. Opinion filed January 20, 1926.

ADOLPH MARKS, for appellant.

MORRIS & ALLEN, for appellee.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The deceased Wilmes was the proprietor of a hotel

in the City of Chicago. On October 1, 1923, he employed the claimant Levy to manage the hotel for a year, Levy to receive as compensation for his services $175 a month, his room, laundry and the pressing of his clothes, and at the end of the year, a bonus of $1,000 if he "ran the hotel successfully." Not long after this agreement was entered into, Wilmes died. Levy continued to manage the hotel until December 17, 1923, when he was discharged by the administratrix of the estate of Wilmes. Levy filed his claim against the estate in the probate court, for his salary up to the time of his discharge and from the time of his alleged wrongful discharge up to the expiration of the year covered by his contract and for the alleged breach of the terms of the contract caused by the failure to furnish him his room and his laundry and pressing for that period, making a total of $2,222.84. The claim was allowed for $1,111.42 in the probate court (which was just one-half of the amount claimed) and on appeal to the circuit court, and a hearing *de novo* there, the claim was disallowed. The claimant seeks to reverse the latter judgment by this appeal.

The sole question presented for our determination is whether the death of Wilmes put an end to the contract. In our opinion the circuit court correctly held that it did.

It is conceded that a contract creating a power or agency is terminated and the power or agency is revoked by the death of either party to the contract, unless the power or agency created by the contract is coupled with an interest, but the claimant contends that the contract involved here created an agency in him, coupled with an interest, basing that contention on the theory that he was to receive a bonus, at the end of the contract period, amounting to $1,000 if he had run the business successfully, the argument being that, in this situation, the claimant would "naturally have an interest in the business" to make it a success

and profitable and thereby secure his bonus. But that is not the kind of interest, which, coupled with a power or agency, will make the contract creating such power or agency irrevocable, as is shown by a number of authorities, some of which are called to our attention by the claimant himself. To constitute a power coupled with an interest, a property in the thing which is the subject of the agency or power, must be vested in the person to whom the agency or power is given, so that he may deal with it in his own name, as distinguished from the proceeds or result of the exercise of the agency. 21 R. C. L. 824, § 8; 2 C. J. 531, § 155; 1 Mechem on Agency, secs. 655, 656; *Mansfield v. Mansfield,* 6 Conn. 559; *Supreme Assembly of Royal Soc. of Good Fellows v. Campbell,* 17 R. I. 402, 408-410; *McCallum v. Grier,* 86 S. C. 162, 166; *Homan v. Redick,* 97 Neb. 299, 149 N. W. 782; *Lacy v. Getman,* 119 N. Y. 109; *Gilbert v. Holmes,* 64 Ill. 548. The rule is not otherwise where the compensation provided for in the contract includes a bonus in case of faithful or efficient service or if, instead of being on a salary basis, it is to be a percentage of the profits made on receipts acquired. *Campbell v. Faxon, Horton & Gallagher,* 73 Kan. 675, 85 Pac. 760; *Kimmell v. Powers,* 19 Okla. 339, 91 Pac. 687. In *Homan v. Redick, supra,* the court referred to *Lacy v. Getman,* 119 N. Y. 109, and the note to *Mendenhall v. Davis,* 52 Wash. 169, in 17 Am. & Eng. Ann. Cas. 179, holding that the death of a servant, under a contract for purely personal services, dissolves the contract, and that the death of the master has the same effect.

In 18 R. C. L. 513, § 24, the author points out that while "no doubt it is true, as a general rule, that death does not absolve a man from liability on his contracts," but that on the contrary, "his obligations must be performed by his personal representatives, or their nonperformance compensated out of his estate," it is also true that there is "an exception to this rule, equally

well established at both the civil and common law, in the case of contracts the performance of which depends upon the continued existence of a certain person or thing. In this case a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance. The implication arises in spite of the unqualified character of the promissory words, because, from the nature of the contract, it is apparent that the parties contracted upon the basis of the continued existence of the particular person or chattel. The death then of the employer puts an end to the contract of service and prevents any recovery thereunder for services performed after that event, though, of course, if the employee continues to render services he may recover for their actual value.'' 25 Cyc. 985 is to the same general effect.

Williston, in his work on contracts, vol. III, § 1941, points out that ''not only is the contract of an employee who binds himself for personal services discharged by physical inability, but it is generally said that death of the employer has the same effect.'' The author says, however, that this rule is not a universal one and that ''in contracts of employment, the nature of the employer's undertaking should be considered in each case. If the character of the employment was such that the employer had free power to delegate the oversight of the work to another and no personal cooperation on his part is needed for the proper fulfillment of the contract, there seems no reason why his death should effect the continued obligation of the contract.'' To the same effect, this author says, in section 1945, that ''the fact that the promise of a surviving party to a bilateral contract is personal in character, will not discharge the promise of a deceased party which is not personal.''

The claimant relies chiefly on the decision of this court in *Mecartney v. Carbine's Estate,* 108 Ill. App.

282, but in that case it was pointed out that under the contract there involved, "so far as appears from the record, the proper carrying out of the contract and the benefits to accrue therefrom to the respective parties were not dependent upon the continued existence of Mr. Carbine (the employer). If the life of Mr. Carbine was essential to the performance of the contract it was terminated by his death." There, no co-operation on the part of the employer was required or contemplated by the contract. Mecartney was free to proceed with the work he agreed to do without directions or orders from his employer. This brings the case within the foregoing rule as given by Williston.

A valuable note on this subject, setting forth a considerable number of decisions in various jurisdictions, will be found appended to the case of *Mendenhall v. Davis, supra,* as it is reported in 21 L. R. A. (N. S.) 914. As in *Babcock v. Goodrich,* 3 How. Pr. N. S. (N. Y.) 52, there commented upon, so in the case at bar, "the business in reference to which it (the contract) was made, depended largely upon the reputation and personal management of both parties."

Where a contract for services is so far mutual in its terms, express or implied, as to involve the obedience or following of directions by the employee and the giving of such directions or orders by the employer, we are of the opinion that the death of either party will terminate it. Where, to use the language of Williston, · the personal co-operation of the employer is needed for the proper fulfillment of the contract, or where the contract is such that the employer may co-operate with or direct the employee in the doing of the work covered by the contract, it will be terminated by the death of the employer, as well as by the death of the employee.

To turn to the facts presented in the case at bar, the work of conducting a hotel depends much upon the character and ability of both the proprietor and the

one who may be employed by him to act as his manager. Nothing to the contrary being provided in the contract a proprietor may make with his manager, the proprietor will have the right to direct his manager as to the policy to be pursued and as to what he wants his manager to do or not to do in conducting the hotel, and the manager will be obliged to carry out such directions. The record shows that the deceased Wilmes was in ill health and he was about to go away on that account. He stated that "he did not know how long he would be gone, and he asked Mr. Levy to look after things during his absence,—he said 'I may be gone a year or I might be back sooner and you take full charge of everything as heretofore.'" If he had recovered his health and returned soon, as he apparently hoped he would, so far as the record shows, he would have had the right to direct his manager, in his conduct of the affairs of the hotel of which he was the proprietor. But instead of recovering, he got worse and died, whereupon the contract terminated.

There being involved in the contract mutual rights and obligations which were personal to the parties thereto, the death of Wilmes, the employer, or of Levy, the employee, would bring it to an end.

In any event, the claimant failed to make such a showing by his evidence, in our opinion, as would entitle him to a judgment in his favor, even assuming his discharge was wrongful, as he alleged, for he failed to show what, if anything, he had been able to earn during the contract period following his discharge. *Doherty v. Schipper & Block,* 250 Ill. 128.

For the reasons stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

O'Connor, J., concurs.

Mr. Justice Taylor specially concurring: I concur in the majority opinion that the judgment should be

affirmed, but do not agree with the reasoning concerning the contract, being of the opinion that the rights of the plaintiff under the contract with Wilmes, the deceased, survived the latter's death.