No. 3351

Second Circuit

KEEFE v. CITY OF MONROE ET AL.

(January 21, 1929.  Opinion and Decree.)

Deutsch and Kerrigan, of New Orleans, attorneys for plaintiff, appellee.

R. F. Becker, Jr., of New Orleans, attorney for defendant, appellant.

Hudson, Potts, Bernstein and Sholars, of Monroe, attorneys for plaintiff, appellant.

H. H. Russell, of Monroe, attorney for defendant, appellee.

ODOM, J. This is a possessory action, coupled with a demand for damages, brought by the plaintiff against the City of Monroe and the members of the Commission Council. The City and the members of the Council filed exceptions of no cause of action, which were sustained by the Court, and plaintiff has appealed.

Plaintiff alleges in substance that in the spring of 1926, he was employed by the City of Monroe, acting through its Mayor, Arnold Bernstein, its Commissioner of Finance and Utilities, D. A. Breard, and its Commissioner of Streets and Parks, Will Atkinson, to design and superintend the construction and maintenance of a nine hole golf course in the "Forsythe Municipal Park of the City of Monroe;" that under his employment and supervision there was completed in said City Park the said golf course and that there was constructed in said park, adjoining said golf course, a brick club house, such as is necessarily and generally used by the general public playing golf in such places, and the housing of the superintendent or persons in charge of such courses, and the keeping and selling of light refreshments, golf clubs, balls, and other paraphernalia kept for sale around such places to the general public; that since the completion of said club house in 1926, he has been "in actual and exclusive possession of the same under the contract and agreement by and between him and the City of Monroe and its Commissioners," the contract and agreement being annexed, and that he was placed in possession thereof by the City and its Commissioners; that he has continued in actual, peaceful and legal possession and occupancy of said golf club house since the early part of the summer of 1926, until January 6, 1928, (more than a year); that, during said period of time, there was kept in said club house clubs and other paraphernalia belonging to the players, as well as a stock of goods such as is usually kept for sale in such places; that said stock of goods and its sale were for the account solely of petitioner, and that the profits on the sales amounted to several hundred dollars each month; and that on December 9, 1927, he received the following letter:

"City of Monroe,
"Monroe, Louisiana,
"December 9th, 1927.
"Mr. John F. Keefe,
"c/o Riverside Club,
"Monroe, Louisiana.
"This is to notify you that your employment to Superintend the golf course at Forsythe Park, or in any other capacity connected with the City is hereby terminated, effective January 1st, 1928.
"Very truly yours,
"(Signed) Arnold Bernstein, Mayor,
"          D. A. Breard, Commissioner of Finance and Utilities.
"          Will Atkinson, Commissioner of Streets and Parks."

He further alleges that he refused to yield possession of said property, and that on January 6, 1928, the said City of Monroe, acting through its Mayor and Commissioners and Chief of Police, Apgar, sent police officers to the place, arrested one

of his employees and "took unlawful and forcible possession of said Edward Keefe (his employee) and, over his protest, removed and expelled him by physical force from said building and threatened him with imprisonment in the city jail if he undertook to go back into said premises;" that said conduct was "an unlawful trespass on the actual, lawful and peaceful possession and rights of your petitioner and has deprived him of his lawful possession and right of possession over said premises and the right to enjoy the same; and that your petitioner is entitled, through injunctive remedies of the Court, to be restored to said possession of said property by mandatory injunction and to be maintained therein by enjoining and restraining said parties and each of them from interfering with such possession when restored by said mandatory injunction," and that he is entitled to $950.00 damages, "by reason of the trespass upon and invasion of his rights" and $1,000.00; attorney's fees.

He prayed for judgment "ordering and directing that a mandatory injunction issue compelling the City of Monroe and the said parties hereinabove named, both as officials and individuals, to restore and deliver possession and occupancy of the premises herein described to your petitioner, and that an injunction further issue thereupon maintaining such possession in your petitioner until otherwise dispossessed by due process of law," and for damages as aforesaid.

The contract alleged upon and annexed to plaintiff's petition reads as follows:

"This constitutes an agreement entered into between the City of Monroe and John F. Keefe:

"I, John F. Keefe, agree to design and superintend the construction of a nine hole Golf Course (Municipal) in Forsythe Park, Monroe, La. I also agree to superintend the maintenance of said golf course for a period of five (5) years, during which time I agree, if called upon, to consult with the officials of the City of Monroe and to give advice on all questions connected with the maintenance, alteration, operation of said golf course.

"The usual fee for the above mentioned services is One Thousand ($1,000.00) Dollars for the designing and laying out of the golf course, and Eighteen Hundred ($1,800.00) Dollars per year for supervision and maintenance.

"In consideration of the above mentioned services to be rendered by me, I agree to accept, in exchange for said services, the following proposition from the City of Monroe:

"We, the Officials of the City of Monroe, in consideration of the foregoing services to be rendered by John F. Keefe, agree to construct a building or provide space in a building to be constructed by the City of Monroe for the purpose of permitting the said John F. Keefe, free of any charge, to conduct in said building or space an enterprise or business consisting of the selling of soft drinks, sandwiches, golf clubs, balls and other articles of a similar nature that are usually sold in a place of this character for the comfort and convenience of golf players.

"We agree to grant this concession to John F. Keefe for a period of five (5) years from the date of the opening of the said Municipal Golf Course during which time we further agree not to permit the operation of another concession of a similar character that would in any way affect or interfere with the privileges granted by us to John F. Keefe under this agreement.

"We, the Officials of the City of Monroe, agree to live up to and fulfill all terms of this agreement for the whole period of this contract (five years) or as much of the period (five years) as we, individually or collectively, remain in term of office as Commissioners of the City of Monroe.

"(Signed) FOR THE CITY OF MONROE,

"Arnold Bernstein,
"Mayor.

"D. A. Breard,
"Com. P. U.

"Will Atkinson,
"Com. S. & P.
"John F. Keefe."

## OPINION.

Counsel for defendant, appellee, has not favored us with a brief, nor did the District Judge assign written reasons for sustaining the exception of no cause of action. But, whatever the Court's reasons may have been, we think his conclusion that plaintiff's petition discloses no cause of action is correct.

If plaintiff is entitled to relief under the allegations of his petition, which are taken for true insofar as the facts therein set out are concerned, that relief must be granted on one or the other of the following theories:

First: That he is entitled to be maintained in or restored to the possession of said property through a possessory action; or

Second: That his contract with the City, through its Mayor and Commissioners, is one partaking of the nature of a franchise or concession to him to operate a restricted mercantile establishment at the club house in the City Park over a period of years; or

Third: That he was an employee or an officer of the City under a contract which had not expired and which was not terminable by the City and the Commissioners at will.

All parties concede that this was intended to be and is primarily a possessory action, and counsel for plaintiff devote the major portion of their elaborate and exhaustive brief to argument and citation of authorities in support of the proposition that plaintiff is entitled to be maintained in or restored to possession of the club house through such action.

Article 47 of the Code of Practice provides that:

"The possessors entitled to bring these actions (possessory actions) are those who possess as owners. Persons entitled to the usufruct, or to the use of a real estate, and others having real rights growing from such real estate, may also bring their action, when disturbed in the enjoyment of their rights."

Plaintiff did not, and of course could not, allege that he owned the club house of which he had possession, and we are informed by counsel that the District Judge sustained the exception because there was no allegation that plaintiff possessed as owner, being of the opinion that one to be entitled to a possessory action must possess as owner. We are not otherwise informed as to the Court's reasons for his conclusion. However that may be, plaintiff does allege that he had "real rights growing from such real estate," and counsel contend that such allegation, together with others which were made, that he was disturbed and that he was in actual and real possession at the instant the disturbance took place and that such possession had continued for more than one year (Code of Practice, 49), set forth a cause of action under Articles 46, 47, 48 and 49 of the Code.

Whether one must possess as owner in order to maintain a possessory action, need not be discussed or decided here, because the allegations of plaintiff's petition make it perfectly clear that the property of which he had possession and which he desires to retain belongs to the Municipality of the City of Monroe and is, therefore, public property and not susceptible of private ownership or the exclusive, private possession of anyone.

Plaintiff alleges that the golf course which he was employed to design and maintain was "in the Forsythe Municipal Park of the City of Monroe," and his allegations and the contract which he annexes show that the golf course and the club house in connection therewith and adjacent thereto were constructed by and at the expense of the City. . The park, golf course and the club house therein are owned by the public, the municipality and its officers having no interest therein, except to administer the same for the benefit of the inhabitants. And conceding, without holding, that one may, without being the owner of real estate, maintain a possessory action by virtue of "having real rights growing from such real estate," such action must necessarily relate to private property and not to property the title to which is vested in the public.

There are private things and public things. "Things which are for the common use of a city or other place, as streets and public places, are likewise public things." (Civil Code, Art. 454.)

Streets and "public squares" are classed together. They are public places as are likewise public parks.

It is settled by recent decisions that mere physical possession of public places is not such possession as entitles the possessor to maintain himself against the public. In Martin et al. vs. City of Lafayette, 162 La. 262, 110 South. 415, the Court said:

"Now the law is, that mere physical possession of public places, even though extending beyond a year, is not such a possession as entitles the possessor to maintain himself against the public until ousted by a petitory action; * * *."

And in the case of Bruning vs. City of New Orleans et al., 165 La. 511, 115 So. 733, the Court, on first rehearing (page 521), said:

"Suffice it to say that, if the property in controversy be of a nature subject to private ownership and exclusive private possession, then our former decree is correct, and should be reinstated.

"On the other hand, if the property in controversy be of that class of public things, 'the property of which is vested in a whole nation, and the use of which is allowed to all * * *' or such as the streets and public squares of a city (R. C. C. Art. 454), then mere physical possession thereof by a private individual 'is not such a possession as entitles the possessor to maintain himself against the public until ousted by a petitory action; that the public is entitled to enter thereon at once.'" (Citing Martin vs. City of Lafayette, supra.)

The property of which plaintiff had possession being public property, plaintiff's possessory action must fall.

Now, as to the contention that the City, through its Mayor and Commissioners, by virtue of the contract alleged upon, granted to the plaintiff "real rights" in said real estate which must now be respected, the answer is that the officers of the City had no authority or power under the city charter or under the general law to vest in plaintiff, by private contract and agreement, such as this was, the private and exclusive right and privilege to hold and possess this public property as against, not only the City, but against the world. The contract in that respect, is wholly *ultra vires*.

Furthermore, if it be contended that the contract entered into between plaintiff and the city should be construed as one in the nature of a franchise, concession or permit to plaintiff to use said club house for a period of years and have exclusive possession thereof for the purpose of conducting a limited mercantile establishment

therein, and that, until the expiration of the time, the city had no right to oust him, the plaintiff is confronted with the fact that such contract was, on its face, and, from all that may be gathered from the petition, in the very teeth of the city charter.

From plaintiff's petition, we infer that the City of Monroe had adopted the Commission form of government, as provided in Act 207 of 1912. Under Section 20 of this act, such powers as it possessed under its original charter, not inconsistent with the act or in conflict with its provisions, were preserved to it unimpaired. The charter of the City of Monroe is Act 47 of 1900. Under Section 9 of that act, the city has authority and power "to grant franchises, but never without compensation, and never without advertising for thirty days prior thereto and immediately preceding the granting of same, and inviting competition." The services of plaintiff in superintending the maintenance of the golf course may be said to be sufficient consideration for a franchise; but the petition and the contract negative the idea that there was any advertisement or competition invited.

Finally, the city was within its rights in dispensing with the services of plaintiff at any time, whether he be considered an officer or an employee. Section 15 of Act 47 of 1900, reads as follows:

"That the Council may remove, at its pleasure by vote of the majority thereof, any officer or employee, elected or appointed by it."

See Kirkpatrick vs. City of Monroe, 157 La. 645, 102 So. 822.

Counsel for plaintiff cite C. J. 71 and 72 in support of their contention that the city could make a contract with plaintiff to extend over a period of years. The text cited, reads in part:

"In the absence of any constitutional restrictions, the legislature may give to a city authority to make a contract for an unlimited period * * *."

It may be true, as argued by counsel, that there is nothing in the city charter or the general law prohibiting the City of Monroe from making a contract to run over a period of years, as for instance, contracts to furnish power, lights, fuel, or do public printing. But plaintiff's contract does not fall under that head. He agreed to "design and superintend the construction of a nine hole golf course." According to plaintiff's allegation, the construction of the golf course had already been completed. The contract goes on, "I also agree to superintend the maintenance of said golf course for a period of five years." Under the precise letter of this contract, plaintiff was merely an employee of the city.

In the contract, he proposed to perform certain personal services for the city; first, to superintend the construction of the golf course; and second, "I also agree to superintend the maintenance of said golf course," and he stipulates, "the usual fee for the above mentioned services is $1,000.00 for the designing and laying out of said golf course, and $1,800.00 per year, for supervision and maintenance."

In lieu of salary or wages for the personal services he proposed to render, he agreed to accept ("in exchange for said services") the proposition made by the city, which was to allow him the use of the club house "free of charge" to conduct an enterprise or business, the profits from which should be his.

An employee is one who is employed.—

Webster, 15 Cyc. 1031; Bouvier's Law Dictionary, 3d Edition, p. 1035. Plaintiff alleges that he was "employed by the City of Monroe." An employee in the ordinary sense is one who engages to perform personal services for another, usually, but not necessarily, for stipulated wages or a salary. In this case, plaintiff sold his services to the city for a fixed period, at a stipulated salary of $1,800.00 a year, to supervise the maintenance of the golf course. "In consideraton of the foregoing services to be rendered," the city agreed that he should have the use of the club house. The fact that plaintiff was to have the use of the club house in consideration for his services, in lieu of cash, makes him none the less an employee or servant of the city, and subject to discharge by the city at will.

The rule is that if a petition sets out a cause of action on any point, an exception of no cause of action should be overruled.

Counsel for plaintiff argue that, even if their petition discloses no cause of action on other points, it is good on the demand for damages. We do not think so.

The action for damages in this case is not grounded upon false, illegal arrest or imprisonment, nor for loss of profits or for breach of contract. In his petition, plaintiff reserved his right to sue for "further damages sustained by him because of the deprivation of the possession and use of said property and for breach of said contract and agreement hereinabove set forth."

But the action for damages here brought is "by reason of the trespass upon and invasion of his rights and the wanton, illegal ejectment from said premises."

The fifth point in counsels' brief sets forth concisely their contention on this point. It reads:

"Since this suit seeks, in addition to protecting possession and damages against the City, to recover damages against the Mayor and Commissioners individually because of invasion of petitioner's rights and trespass of and invasion of premises of which he was lawfully possessed and illegally ejected from, it states a cause of action, even if petitioner is without right as against the municipality."

The action for damages, therefore, is one purely for trespass.

We have held that plaintiff was an employee of the city and that the consideration for his services was the use of the club house, and held further that said contract of employment might be terminated by the city at its pleasure, and that it was terminated as of date January 1, 1928. The city, through its officers, took possession of the club house on January 6, 1928, and ordered plaintiff to get out. Clearly, plaintiff's right of possession, in point of duration, was co-extensive with the term of his employment. When the city put at an end plaintiff's contract of employment, his right to possess the property ceased, and when the city took possession of the club house on January 6, plaintiff had no rights to invade and his occupancy of the property, after his employment ceased, was a trespass. So that, instead of the city being a trespasser, plaintiff placed himself in that category by refusing to surrender possession.

Counsel, in support of their contention that plaintiff is entitled to damages for what they term a trespass upon the property of which he had lawful possession, cite the cases of:

Thayer vs. Littlejohn, 1 Rob. 140;

Jones vs. Pereira, 13 La. Ann. 102;

Fitzgerald vs. Boulet, 13 La. Ann. 116;

Van Wren vs. Flynn, 34 La. Ann. 1158;

Enders vs. Skannal, 35 La. Ann. 1000;

Boniel vs. Block, 44 La. Ann. 514, 11 So. 869;

Parker vs. McGlyn, 52 La. Ann. 1514, 27 So. 946;

Waller & Edmonds vs. Cockfield, 111 La. Rep. 595, 35 So. 778.

These cases are not in point. Each of them, except one, Van Wren vs. Flynn, involves a contract between landlord and tenant. In the strongest of these cases, that of Enders vs. Skannal, the Court said:

"We have held that plaintiff had a legal right to stay on defendant's land; he was driven therefrom by threats and violence."

In none of these cases was it held that the plaintiff was a trespasser and had no rights upon the premises, but the Court established, and has adhered to the rule, that a landlord, in order to dispossess his tenant, whether the lease has terminated or become terminable on account of a violation of its provisions, must resort to eviction proceedings, which are summary, as provided in the Code and the statutes.

But, the relationship which existed between plaintiff and the city, was not that of landlord and tenant, but one of master and servant—a wide distinction.

A lessee has a quasi ownership of the property subject to the lease, (New Orleans City Railway Company vs. McCloskey, 35 La. Ann. 786). He has the right of the enjoyment of the thing granted to him (C. C. 2674) which "right to that enjoyment vests by mere consent of the parties in the same manner and subject to the same rules as are laid down for contracts, which purport to transfer the ownership of property." (C. C. 1925.) A tenant possesses against the owner, whereas an employee or servant possesses for his employer—his possession being that of the owner.

From 16 R. C. L., Sec. 57, p. 582, we quote the following:

"The legal result of the termination of the employment is that the landowner may take immediate possession and use such force as necessary to expel the employee, who is not deemed to have any distinct possession, his possession being deemed in law during the employment that of his employer without any rights surviving the employment. The question whether the discharge of the servant was justified or not does not affect the master's right to oust the servant; if the discharge was unjustified, the servant's remedy is by an action on the contract of employment. As a general rule the master cannot obtain possession of the premises by means of statutory proceedings of a summary nature, which, under the express terms of the enactment, are specially applicable to the relation of landlord and tenant."

See Act 313 of 1908.

Davis vs. Long, 45 N. D. 581, 178 N. W. 936, 14 A. L. R. 796;

Homan vs. Reddick et al., 97 Neb. 299, 149 N. W. 782 L. R. A. 1915C, 601; see notes in 4 L. R. A. (N. S.) p. 704, et seq.; Ann. Cas. 1916C, 1112;

Bowman vs. Bradley, 151 Pa. 351, 24 Atlantic 1062, 17 L. R. A. 213.

The judgment appealed from is affirmed, with costs in both courts.